Randall **WEIDNER**,
Petitioner–Appellant,

v.

James H. **THIERET**, Warden, Menard Correctional Facility, and Neil F. Hartigan, Attorney General of the State of Illinois, Respondents–Appellees.

No. 88–1692.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1988.

Decided Jan. 31, 1989.

Rehearing and Rehearing En Banc Denied March 13, 1989.

Erica M. Landsberg, Sidley & Austin, Chicago, Ill., James S. Whitehead, Chicago, Ill., for petitioner-appellant.

Jack Donatelli, IAG, Chicago, Ill., for respondents-appellees.

Before CUDAHY and POSNER, Circuit Judges, and GRANT, Senior District Judge.*

POSNER, Circuit Judge.

This appeal from the denial of a petition for habeas corpus, 683 F.Supp. 1195 (N.D. Ill.1988), presents a difficult question relating to the procedures to be followed in habeas corpus proceedings in which the petitioner claims that he was convicted on the basis of a coerced confession, and hence deprived of his liberty without due process of law, in violation of the Fourteenth Amendment.

Randall Weidner was convicted in an Illinois state court in 1981 of the rape and murder of Sharon Visnack, whose husband had paid Weidner (and another man, Kubick) $500 plus a car and a gun to kill Sharon in retribution for her suspected infidelities. The hired killers raped her before murdering her and made signs of forced entry into the Visnack apartment in order to throw the police off the scent. (In fact they had entered by means of a key Visnack had given them.) All three confessed. They were tried together, and their confessions were introduced at the trial. The jury convicted all three. The judge sentenced Visnack to imprisonment for his natural life, Weidner to 80 years in prison, Kubick to 70 years.

Before trial, Weidner had sought unsuccessfully to suppress his confession, on the ground that it had been coerced. Evidence was presented at the suppression hearing that Weidner had been 17 years old when arrested, that he had an eighth grade education and could barely read, and that he had serious brain damage caused by heavy use of LSD and other drugs. Weidner testified that after being arrested he had been taken to the police station and questioned by two police officers, one of whom, Matthews, toyed with a gun while questioning him, told him that if he didn't make a statement he would be sentenced to the electric chair, and refused to let him use the telephone to call his parents and, in refusing, again threatened him with the electric chair. Weidner further testified that after Matthews got through with him, the other officer, Dorsey, playing the "good cop" role in the standard interrogation routine, took over the examination and elicited Weidner's signed confession within five minutes; this was forty minutes after the arrest. The officers denied having either threatened Weidner or refused him permission to telephone his family. They

---

* Hon. Robert A. Grant of the Northern District of Indiana, sitting by designation.

also testified that they had given Weidner the *Miranda* warnings both when he was arrested and again at the station house; he testified that he didn't remember whether they had done so when arresting him but thought they had done so at the station. A priest had been asked by Kubick's family to go to the station and had spoken to Weidner there immediately after Weidner confessed. The priest wanted to testify that Weidner had told him that the police had said he would be killed in the electric chair unless he talked, but the judge ruled that such testimony would be inadmissible hearsay as the report of a self-serving declaration by the defendant, and so refused to allow the priest to testify. See, e.g., *People v. Barnes*, 107 Ill.App.3d 262, 266–67, 63 Ill.Dec. 199, 202, 437 N.E.2d 848, 851 (1982); *People v. Westefer*, 169 Ill.App.3d 59, 119 Ill.Dec. 522, 522 N.E.2d 1381 (1988). The judge then made an oral ruling that the confession was admissible. He expressly found that the police had given Weidner the *Miranda* warnings. But concerning the issue of brain damage and the behavior of the police in conducting the interrogation, the judge stated only: "I further find from the evidence as to the evidence elicited and the totality of the circumstances that the statement or statements were given voluntarily and that no threats, coercion or otherwise induced such statements."

After exhausting his state remedies, see *People v. Visnack*, 135 Ill.App.3d 113, 126, 89 Ill.Dec. 901, 910, 481 N.E.2d 744, 753 (1985), cert. denied by Illinois Supreme Court, Weidner brought this federal habeas corpus action. As Judge Aspen noted in his opinion refusing to hold an evidentiary hearing and dismissing the action, the central factual dispute is whether the police officers threatened or otherwise coerced Weidner into confessing. Judge Aspen acknowledged that the state trial judge's ruling on this issue had been ambiguous (as in *United States ex rel. Cole v. Lane*, 793 F.2d 155 (7th Cir.1986) (per curiam), where we remanded). It was unclear whether the state judge had believed the police officers' testimony in its entirety, or had thought that even if they had behaved, in whole or

part, as Weidner had testified they behaved, their behavior did not in the circumstances invalidate his confession. Judge Aspen disposed of the matter by ruling that "when the state court's findings of fact are unclear, we must assume that the state court correctly applied the law and gleam [*sic*] from the court's legal conclusions the implicit factual findings. This presumption fails only if there is some evidence that the state court incorrectly applied legal principles or the law applied presents a novel problem." 683 F.Supp. at 1198 (citations omitted). Judge Aspen thought the law clear that if the police officers had threatened Weidner, his confession was involuntary and therefore inadmissible. "Accordingly, the [state] trial court's legal conclusion that the statements were given voluntarily contains an implicit factual finding against Weidner's credibility. Nothing in the record detracts from that factual finding, so we presume that it is correct." *Id.* at 1199. With the issue of threats out of the case, Judge Aspen had no difficulty in concluding that "the confession was knowing and intelligent," *id.*, notwithstanding Weidner's conceded youth and contested brain damage. For the transcript of the suppression hearing showed that Weidner was able to understand the questions put to him on direct examination and cross-examination; the psychiatric examination that formed the basis of the testimony about his mental condition had been brief and had been conducted almost a year after the confession was made; and Weidner had passed most of the tests administered to him by the psychiatrist.

█ The question whether a confession has been coerced, like such questions as negligence and possession, would ordinarily be regarded as one of fact ("ultimate fact"), even if the underlying or subsidiary or "historical" facts—the facts that have no tincture of legal doctrine—are undisputed. Cf. *Mucha v. King*, 792 F.2d 602, 604–06 (7th Cir.1986). That indeed was how the question used to be treated in some states. See *Stein v. New York*, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953). No more. See *Jackson v. Denno*,

378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). A federal district court asked to decide whether a confession has been coerced and therefore cannot be used in a state criminal trial without violating the due process clause of the Fourteenth Amendment must make up its own mind on the question; it is not to extend to the state court's finding the deference that the habeas corpus statute requires be given state court findings of fact (see 28 U.S.C. § 2254(d)). *Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985).

This ruling implies an unusual division of responsibilities between state court and federal court. The state court finds the underlying facts, of the "who did what to whom, when, where, and why" variety, and the federal district court defers to these findings under section 2254(d); but then the federal court makes its own judgment whether the findings "add up" to coercion. Our review of that finding is, moreover, plenary—or so at least we held, though virtually without discussion of the question, in *United States v. Hawkins,* 823 F.2d 1020, 1022–23 (7th Cir.1987), and *Sotelo v. Indiana State Prison,* 850 F.2d 1244, 1247 (7th Cir.1988). Judge Easterbrook, concurring in *Sotelo,* has questioned the last step in this chain. See *id.* at 1253–55. The fact that *Miller* requires the federal district court to take a fresh look at the issue of voluntariness does not entail that we should do so as well. We should be wary of facile syllogisms, such as: the issue of voluntariness is one of law (*Miller*); appellate review of determinations of law is plenary; therefore our review of the district judge's determination of the voluntariness of Weidner's confession should be plenary. The Supreme Court wanted independent *federal* review of the issue; hence it had to hold that the issue was one of law and therefore not subject to section 2254(d). For purposes of appellate review, however, the issue might be one of fact. It is nowhere written that the law-fact distinction must be treated the same in 28 U.S.C. § 2254(d) and in Fed.R.Civ.P. 52(a). "Law" and "fact" do not in legal discourse denote pre-existing things; they express policy-grounded legal conclusions. We ought to ask what is gained and what lost by appellate second-guessing of a federal district judge's determination that a state criminal defendant's confession was voluntary. Cf. *Pierce v. Underwood,* —— U.S. ——, 108 S.Ct. 2541, 2546–49, 101 L.Ed.2d 490 (1988).

The summary treatment of the question in *Hawkins* and *Sotelo* (the former not even a habeas corpus case, and expressing merely a conclusion, the latter merely relying on the authority of the former) suggests that it is open to reexamination. But this is not the case for that reexamination. The issue here is not whether Judge Aspen made a correct determination on the basis of the subsidiary facts found by the state court; it is what those facts are. Probably the state judge believed the police officers' testimony in its entirety and disbelieved the testimony by the psychiatrist that Weidner was severely brain-damaged. Although police, like other types of witness, do not always testify truthfully, and although there is nothing inherently implausible in Weidner's testimony about what went on in the police station, triers of fact usually credit the police in a swearing contest between police officers and criminals (there is no doubt about Weidner's guilt). Yet in closing argument on the motion to suppress, the state did not deny (did not admit, either) that Officer Matthews had threatened Weidner with the electric chair. The testimony of Weidner's psychiatric witness was unconvincing, however; so at least it appears from the transcript of the suppression hearing, although such appearances can mislead. The psychiatrist testified that Weidner had been able to identify the president, the governor of Illinois, and the mayor of Chicago, to give the correct number of states and name six of them (the psychiatrist only asked for six), to identify the fallacy in the sentence "Last January I wanted to pick some orchids so I went out into Grant Park and tried to get them off the tree" (to which Weidner had replied that orchids don't grow on trees in Chicago in January), and to perform the basic arithmetical operations of addition, subtraction, multiplication, and division. He had fallen

down only in being unable to repeat a series of two-digit numbers, to repeat the sentence "A cowboy from Arizona went to San Francisco with his horse to buy a saddle and a new suit of clothes," and to spot the fallacy in the syllogism "gold is more valuable than silver, therefore silver is more valuable than lead." From these isolated failures in an interview that lasted between an hour and an hour and a half, from the "rambling, circumstantial, tangential and irrelevant" character of Weidner's conversation (as the psychiatrist characterized it, without elaboration), and from Weidner's unsubstantiated claim to have taken LSD on more than 200 occasions, the psychiatrist inferred improbably that Weidner was suffering from severe brain damage. The psychiatrist's own testimony was belligerent and marked by memory lapses; it could well have been described as "rambling, circumstantial, tangential and irrelevant." Weidner's own testimony at the suppression hearing was perfectly lucid—although this was months after the psychiatric examination had taken place and Weidner's thinking may have improved in the interim, a period of enforced cessation of drug use.

Unfortunately the state judge did not indicate whether he believed or disbelieved any part of either party's evidence (where the parties were in conflict; that Weidner had received the *Miranda* warnings was essentially uncontested). It is quite unlikely that the judge accepted *all* of the defendant's evidence. For that would mean that the police had threatened a young man who had severe brain damage with death in the electric chair and with a gun. To conclude on these facts that Weidner's statements confessing to murder "were given voluntarily and that no threats, coercion or otherwise induced such statements" would have been ludicrous; and state courts are presumed, though not irrebuttably, to know federal law and to apply it correctly. *LaVallee v. Delle Rose*, 410 U.S. 690, 694–95, 93 S.Ct. 1203, 1205, 35 L.Ed.2d 637 (1973). But suppose the judge believed the police officers' denial that Matthews had toyed with a gun in Weidner's presence and disbelieved the psychiatrist's testimony that Weidner had *severe* brain damage, but

believed Weidner's testimony that Matthews had threatened him with the electric chair—by way of underscoring the possibility that he was facing capital charges (as he surely was)—and had refused to let him call his parents. And suppose the judge also believed that Weidner, while not severely brain damaged, was by dint of heavy drug abuse unable to think clearly. All this is possible. The excluded testimony of the priest was not implausible; if Weidner was clever enough to tell a phony story about being threatened with the electric chair, as the state speculates, why wasn't he clever enough a few minutes earlier to refrain from confessing? And there were discrepancies between Matthews' and Dorsey's testimony—Matthews testified rather implausibly that the only gun in the interrogation room was one locked in the desk drawer; Dorsey testified that both officers were armed. The "bad cop—good cop" routine is of course standard, and Weidner did not deny having received the *Miranda* warnings; so part of his testimony, at least, appears to have been truthful. The judge would not have been out of his mind if he had believed that Weidner had been threatened with the electric chair and had some problems with reasoning, although probably not severe brain damage.

■■■■ Our conjecture—it is no more than that, of course—concerning the subsidiary facts found by the state trial judge is consistent with a presumption that he knew and tried to follow the federal law of coerced confessions. That law is murky, and the judge might honestly and reasonably, though not necessarily correctly, have believed that if the police went only so far as we have conjectured, Weidner's confession would still be voluntary despite his being somewhat impaired mentally. Judge Aspen to the contrary notwithstanding, it is no longer the law, despite the famous dictum in *Bram v. United States*, 168 U.S. 532, 542–43, 557–58, 18 S.Ct. 183, 186–87, 192, 42 L.Ed. 568 (1897), that even the slightest threat will render a confession involuntary. As noted recently in *United States ex rel. Cole v. Long*, 852 F.2d 975,

977–80 (7th Cir.1988); *id.* at 980 (concurring opinion), the Supreme Court now requires a consideration of the entire circumstances of the interrogation. See, e.g., *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Weidner, as he must have known, faced capital charges, and may have been determined to confess his part in the crime in order to reduce the probability that the state would seek the death penalty. That much intelligence he may well have had, even if weak at syllogisms. The threats may have had nothing to do with his decision to confess, and if not, the confessions were admissible. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986) ("Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law") (footnote omitted).

■ A state trial judge is not required to make detailed findings of fact in deciding that a confession is admissible. *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967). And it would be unseemly for a federal district judge to summon the state trial judge as a witness in a federal habeas corpus proceeding to give testimony and be cross-examined with respect to implicit findings that he may have made many years earlier. Nor is there any serious question that Weidner was guilty of the grave crimes of which he was convicted. The confessions of all three codefendants were amply corroborated, and Kubick did not even claim that his confession had been coerced. But we have to know what the facts underlying Weidner's confession are before we (or the district judge) can make an independent judgment whether they cross the threshold of impermissible coercion.

One possibility is to assume that the facts are as adverse to the state as the state judge could plausibly be expected to determine them to be, consistent with the presumption that state judges know and correctly apply federal law pertinent to the discharge of their responsibilities; and then to decide whether those facts show imper-

missible coercion—if not, the judge's failure to have made adequate findings of fact would be academic. But as already suggested, that approach would place this case on the razor's edge between the voluntary and the involuntary confession. We are reluctant to decide a difficult question on hypothetical facts. We conclude that the district judge erred in dismissing the action without a hearing. On remand, the state can if it wants submit an affidavit from the state trial judge explaining his cryptic and ambiguous ruling. Alternatively, Weidner and the police officers can be called to testify about what went on during the interrogation, and the district judge can make his own findings of fact. If need be the psychiatrist can be called to testify as well. The record of the original suppression hearing will be admissible to round out any testimony given in the district court. See 28 U.S.C. §§ 2254(d)(8), (e).

There is much that is puzzling about the concept of involuntary and voluntary, or coerced and uncoerced, confessions. At first glance it might seem that it would never be in the interest of an arrested person to confess, and moreover that he would never confess if he were not in police custody—that is, in the hands of armed men skilled at extracting admissions. On this view every custodial confession would carry with it a strong presumption of involuntariness. But people who have committed violent crimes often are anxious and guilt-ridden, and if "worked on" in certain ways not necessarily involving threats or promises are often eager to confess. There seems no reason this method of police investigation should be forbidden in a society as depressingly rife with violent crime as ours. Interrogation becomes constitutionally objectionable only when the circumstances prevent the person being questioned from making a rational choice. See *Barrera v. Young,* 794 F.2d 1264, 1270 (7th Cir.1986); *Reddix v. Thigpen,* 805 F.2d 506, 516 (5th Cir.1986). Misrepresentations can do this, by distorting the alternatives among which the person under interrogation is being asked to choose; so can threats that prevent a person from thinking clearly, or that (much like misrepresen-

tations) exaggerate the consequences of one of the alternatives—not confessing.

In making a judgment whether the conditions of interrogation prevented the defendant from making a rational choice, the defendant's capacity for rational choice is important—and that is where such circumstances as the defendant's age, intelligence, and education come in. Weidner was at the time of the interrogation young, poorly educated, and perhaps somewhat brain-damaged as a result of drug abuse; he may not have been a clear thinker. Threats or other methods of inducing fear or a sense of isolation or hopelessness, and thereby interfering with the capacity for rational choice, would not have to be of the same magnitude to disrupt Weidner's limited capacity for rational deliberation as they would have to be in the case of a mature, sound, alert, and educated defendant. That is why it is so important to know exactly what went on in the station house when Weidner was questioned, insofar as that historical event can be reconstructed in a legal proceeding. The case must be remanded for a hearing designed in the first instance to clarify the state judge's findings, and if this cannot be done to reconstruct the conditions of the interrogation.

REVERSED AND REMANDED, WITH DIRECTIONS.

CUDAHY, Circuit Judge, concurring:

I join fully in the opinion of the court except that I do not discern in *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), any suggestion that the standard applied by the federal appellate court should be different from that used by the district court in appraising the voluntariness of a confession. The suggestion made by Judge Easterbrook, specially concurring in *Sotelo v. Indiana State Prison*, 850 F.2d 1244, 1247 (7th Cir.1988), may have merit but I certainly do not wish to be understood to express a view of it at this juncture.