**Raymond Charles LAMB, Petitioner,**

v.

**Jack R. DUCKWORTH, Respondent.**

**Civ. No. S 88–591.**

United States District Court,
N.D. Indiana,
South Bend Division.

March 15, 1989.

John B. Wilson, Jr., Nashville, Ind., for petitioner.

Kirk A. Knoll, Deputy Atty. Gen., Indianapolis, Ind., for respondent.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

I.

On September 26, 1988, petitioner, Raymond Charles Lamb, appearing by counsel, filed a petition seeking relief under 28 U.S.C. § 2254. The petitioner was convicted in the Jefferson Circuit Court at Madison, Indiana, of the crime of First Degree

Murder. He was sentenced to life imprisonment on September 6, 1974. The conviction was affirmed by the Supreme Court of Indiana in a unanimous opinion authored by Justice Hunter, and reported in *Lamb v. State*, 264 Ind. 563, 348 N.E.2d 1 (1976).

Thereafter, a petition for post-conviction relief was filed in the Jefferson Circuit Court and was denied. The denial was appealed to the Supreme Court of Indiana which unanimously affirmed the same in an opinion authored by Chief Justice Shepard and reported in *Lamb v. State*, 511 N.E.2d 444 (Ind.1987).

Here, the petitioner raises four (4) grounds as follows:

1. Petitioner's constitutional right (sic) were violated when the Court allowed into evidence a confession that was obtained under duress and should have been suppressed.

2. Petitioner's constitutional right to effective assistance of counsel was denied him by the actions of his trial Court.

3. Petitioner's constitutional right to due process was denied when the State failed to disclose a "deal" made to a State's witness.

4. Petitioner's constitutional right to due process was denied when the State, during void (sic) dire, told the jury to disregard the presumption of innocence.

The petitioner was charged on March 15, 1974 with the crime of First Degree Murder in the Johnson Circuit Court at Franklin, Indiana for the shooting of Kathryn Kauffman. The case was subsequently venued to the Jefferson Circuit Court.

## II.

This court will deal with the most difficult issue first. In this regard, neither the brief of the attorney general, nor the brief of counsel for petitioner pinpoint the most recent and relative authority in regard to this subject. To some extent, this springs from the fact that there have been recent and dynamic judicial developments. *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88

L.Ed.2d 405 (1985), dealt with the standard of review in regard to the voluntariness of a confession in a United States district court under 28 U.S.C. § 2254 and, particularly, § 2254(d). There have been at least two, and perhaps more, recent cases in this circuit dealing with that standard of review. Most recently, Judge Posner, speaking for the Court in *Weidner v. Thieret*, 866 F.2d 958 (7th Cir.1989), held that *Miller* requires the federal district court to take a fresh look at the issue of voluntariness. In an earlier appeal from this court in *Sotelo v. Indiana State Prison*, 850 F.2d 1244 (7th Cir.1988), this issue was also involved. Judge Easterbrook ventured an analysis in concurrence that might well be somewhat in tension with the approach of Judge Posner in *Weidner*. Since *Weidner* is the last word on the subject, this court will make every conscientious effort to follow its dictates.

This same subject was also involved in another appeal from this court in *Eagan v. Duckworth*, 843 F.2d 1554 (7th Cir.1988), *cert. granted*, 488 U.S. 888, 109 S.Ct. 218, 102 L.Ed.2d 209 (1988), in an opinion by Chief Judge Bauer, with a strong and lengthy dissent by Judge Coffey.

Another parallel and relevant development was found in *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), which generally places the burden upon the state to establish the voluntariness of a confession only by a preponderance of the evidence. *Colorado* was emanated directly from the highest court in Colorado to the Supreme Court of the United States in a criminal prosecution. However, in this circuit and elsewhere, its teaching has been applied by United States district courts and courts of appeals in the context of proceedings under 28 U.S.C. § 2254. *See Smith v. Duckworth*, 856 F.2d 909 (7th Cir.1988); *Johnson v. United States*, 838 F.2d 201 (7th Cir.1988) (in 28 U.S.C. § 2255 proceeding); *Bryan v. Warden, Indiana State Reformatory*, 820 F.2d 217 (7th Cir.1987), *cert. denied*, 484 U.S. 867, 108 S.Ct. 190, 98 L.Ed.2d 142 (1987); and *Perri v. Director, Department of Corrections*, 817 F.2d 448 (7th Cir.1987), *cert. denied*, 484 U.S. 843, 108 S.Ct. 135, 98

L.Ed.2d 92 (1987). Another very recent example of following *Colorado v. Connelly* in a § 2254 case is in *Weidner, supra,* itself.

In order to remove any doubt at all in regard to the proper review function in regard to the voluntariness issue, as defined in *Miller, supra, Sotelo, supra,* and *Weidner, supra,* this court has received and examined carefully and fully the state record under the mandates of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

This court does not purport to rely solely on the presumptions in 28 U.S.C. § 2254(d) and those in *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) or other similar cases in this circuit. *See also Dooley v. Duckworth,* 832 F.2d 445 (7th Cir.1987), *cert. denied,* 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 438 (1988); *United States ex rel. Haywood v. O'Leary,* 827 F.2d 52 (7th Cir.1987); *Bryan, supra; Shepard v. Lane,* 818 F.2d 615 (7th Cir. 1987), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987); and *Perri, supra.*

■ As relevant background, it is helpful to cite and quote from Justice Hunter's opinion the basic factual framework of this issue:

> Procedurally, appellant challenged the admissibility of his confession through a pre-trial motion to suppress. After a hearing on the motion to suppress, at which appellant did not testify, the trial court overruled the motion. At trial when the confessions were introduced, appellant did not raise any objection other than to rely upon his earlier motion. The overruling of such motion was assigned as error in appellant's motion to correct errors, and it is that error which we review below. In so doing, we review the evidence before the trial court at the hearing on the motion to suppress together with all evidence presented prior to the admission of the confessions.
>
> Appellant maintains that statements he made to the police on September 2nd and 6th, 1973, were not voluntarily given and should have been suppressed. When

the statements were given, appellant had been in jail for several months on another charge. Commencing in July, 1973, John Lasiter and Sheriff John Means, both of the Johnson County Sheriff's Department, began questioning appellant about the murder here charged. The frequency of these sessions was no more than twice a week, and the duration of each session ranged from half an hour to forty-five minutes. Appellant's *Miranda* rights were explained to him before each of these inquiries. These sessions were discontinued sometime during the latter part of August, apparently because they were unproductive. Sheriff Means testified at the motion to suppress hearing that it had been at least two weeks, possibly three, since appellant had been questioned about the murder prior to his confession on September 2. The ground work for appellant's confession on September 2 was laid when, on September 1, appellant sent a note asking to see Lasiter. When Lasiter responded the appellant told him:

> [CROSS–EXAMINATION OF JOHN LASITER.]
>
> A. "... if I would make arrangements for him to have a telephone conversation with Bonnie Emmert, the girl he had been living with, that after asking what she thought that he would probably confess to the two homicides I had been working on. So I made these arrangments (sic) and was notified that Bonnie would return my call at 10:30 A.M. on Sunday. So that was when I went down to the jail and got him out and took him to the downstairs office and she called approximately 9:30 A.M. He talked to her for 30 to 40 minutes. After that he got up from the telephone and said 'I am ready to confess' and we went to my office and he did so."

Appellant urges that his confession was rendered involuntary because of his fear that his common-law wife, Bonnie, might be charged as an accessory to the theft for which he was incarcerated and/or in the murder under investiga-

tion. Appellant was also concerned about the fate of his children in the event Bonnie was so charged. On this point, Sheriff Means' testimony indicates appellant was advised at some time during the interrogations of the possibility that Bonnie might be charged as a (sic) accessory to the homicide. There was absolutely no testimony presented at the motion to suppress hearing, however, which would indicate that the investigating officers directly threatened to arrest Bonnie or take away the children if appellant did not confess to the murder. The officers denied making any threats or promises to induce appellant's confession and appellant did not testify at the motion to suppress hearing.

The force upon the will of appellant of any implied threat arising from the Sheriff's statement that it was possible that appellant's wife might be charged as an accessory must be determined from facts peculiarly within the accused's own knowledge and from circumstantial evidence. Here, the circumstantial evidence linking appellant's wife to the murder was sparse, if not non-existent. To be sure, this case is not like *Hall v. State* (1971), 255 Ind. 606, 266 N.E.2d 16, relied upon by appellant. In *Hall*, the officers advised the defendant that his wife was a prime suspect. Here, officers made no such statement. In the absence of such a statement by the police, we hold that the mere advice of the possibility of an accessoryship charge, without more, did not render appellant's confession involuntary.

Appellant, however, suggests additional factors which he believes weigh upon the voluntariness of his confession. To the foregoing, appellant adds the pressures resulting from confinement and "the psychological impact of interrogation by many." In addition to the series of interrogations described above, appellant was also questioned on other occasions by officers from other agencies about other crimes. We can find nothing in the record, however, which indicates that any of these other questioning sessions, separately, together or added to

any or all of the questioning sessions about this murder cumulatively destroyed appellant's free will. To the contrary, we believe appellant's request to talk with Lasiter, coming several weeks after he had last been questioned about this murder, is a strong indication that appellant's will was not overborne and that his decision to confess was made after careful reflection.

Prior to taking the September 2 statement, appellant was again advised of his *Miranda* rights and executed a written waiver thereof. After reviewing all the evidence presented at the motion to suppress hearing, we hold that appellant's confessions were voluntarily given, and the trial court properly overruled appellant's motion to suppress.

It is improper for this court to presume as correct the legal analysis of the Supreme Court of Indiana. It does not do so here. It is altogether appropriate to agree with the careful and balanced analysis of Justice Hunter as set out fully in Part I of his opinion. This court is in agreement with it on the basis of a separate and independent examination of the record. This court does not find in this record the deficiencies that Chief Judge Bauer found in the *Eagan, supra,* record, and believes that it has complied with the recent mandates of *Weidner, supra.*

## III.

■ The next issue has to do with an allegation of ineffective assistance of trial counsel under the formulation of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In its simplest form, there must be a substandard professional performance that results in actual and serious prejudice, depriving the plaintiff of a significant due process right. It is alleged that the petitioner was charged with and convicted of the murder of Kathryn Kauffman (In the petition, she is referred to as Katherine.). At the time of this petitioner's taped confession, he also confessed to the killing of Carol Rhodes. The entire tape was played to the jury, including the confession with reference to

Rhodes. Ineffective assistance appears to be the sole basis of counsel's failure to object to the evidence referencing the Carol Rhodes murder.

The record indicates that petitioner's counsel made vigorous efforts to suppress his confession which the Jefferson Circuit Court rejected. His defense counsel then was faced with the challenge of defending him against his own confession. It may well have been an appropriate professional strategy in that context to permit the reading of the entire confession.

Recently, Judge Eschbach, speaking for the court in *United States v. Grizales*, 859 F.2d 442 (7th Cir.1988), spoke wise words in regard to the concept of ineffective assistance of counsel. He stated:

The standard for evaluating a Sixth Amendment ineffective assistance of counsel claim is well-established. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *quoted in United States ex rel. Link v. Lane*, 811 F.2d 1166, 1170 (7th Cir.1987). To warrant reversal of her conviction appellant must show "(1) that counsel's representation fell below an objective standard of reasonableness and (2) that [she] was prejudiced by trial counsel's failure [to perform adequately]." *Lane*, 811 F.2d at 1170 (citing *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064–65).

The Supreme Court has instructed that in evaluating the performance of a trial attorney we are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Appellant "has a heavy burden in proving a claim of ineffectiveness of counsel." *Jarrett [v. United States ]*, 822 F.2d [1438] at 1441 [7th Cir.1987] (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). The Supreme Court has further cautioned ap-

pellate courts to resist the temptation to "second-guess" the actions of trial counsel after conviction. *Id.* It is clear that the performance of trial counsel should not be deemed constitutionally deficient merely because of a tactical decision made at trial that in hindsight appears not to have been the wisest choice. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *United States v. Kennedy*, 797 F.2d 540, 543 (7th Cir.1986).

Given the omniscience of hindsight, it might now appear that this petitioner's counsel might have acted differently. However, on the record presently before the court, this court cannot conclude based on a separate examination of the record that there was such a deficiency.

This is not the only court that has dealt with the issue of ineffectiveness. Chief Justice Shepard in Part II of his opinion at page 445 dealt specifically with allegations of ineffective assistance of counsel in the context of the *Strickland, supra,* standard, as follows:

Lamb claims his counsel was ineffective for allowing him to testify and for failing to object to evidence that he committed a second murder. To prevail on this claim, Lamb must prove that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. He also must prove that counsel's conduct was so prejudicial as to deprive him of a fair trial. A fair trial is denied when the conviction resulted from a breakdown in the adversarial process that rendered the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In meeting this burden, Lamb must overcome by strong and convincing evidence a presumption that counsel has prepared and executed his client's defense effectively. *Terry v. State* (1984), Ind., 465 N.E.2d 1085.

A determination of ineffectiveness of counsel revolves around the particular facts of a given case. This Court will not speculate about what may have been the most advantageous strategy, and isolated bad tactics or inexperience does not

necessarily amount to ineffective assistance of counsel. *Mato v. State* (1985), Ind., 478 N.E.2d 57.

The record shows that the same gun which was used in the Kauffman murder was also used to kill another young woman, Carol Rhodes, in another county. At the time that he confessed to the Kauffman murder, Lamb admitted killing Rhodes. Police were otherwise unable to link Lamb to the Rhodes murder because there were no witnesses and the weapon itself was never found. At the time of the trial for the Kauffman murder, Lamb had not been charged with the Rhodes killing.

Because the ballistics tests indicated that the same person killed Kauffman and Rhodes, defense counsel attempted to prove that Lamb had not been implicated in the Rhodes death and thus could not have been Kauffman's murderer. Counsel did not object to testimony concerning the Rhodes murder. Indeed, he referred to that crime during the defendant's case-in-chief.

Under other facts, such a defense might well constitute ineffectiveness assistance, given the extremely prejudicial nature of the evidence concerning the uncharged murder. The reasonableness of defense counsel's conduct, however, must be evaluated from his perspective at the time. *Poston v. State* (1986), Ind., 495 N.E.2d 724. The case against Lamb was nearly insurmountable from a defense standpoint. Lamb had confessed to police and to a cellmate. He made incriminating statements to his common-law wife, who placed him at the scene of the crime with a gun at the time of the murder. Although defense counsel initially considered an insanity defense, Lamb was examined and determined to be sane. Thus, counsel had few choices left in mounting a defense. We are not persuaded that the strategy he selected would have seemed unreasonable to many defense attorneys facing the same circumstances.

With regard to Lamb's testimony, defense counsel filed a motion *in limine* to bar evidence about Lamb's recent plea of guilty to assault and battery with intent to kill in an unrelated shooting in Hamilton County. The trial court granted the motion.

Nonetheless, the State on cross-examination asked Lamb whether he had ever shot someone. Noting the order *in limine* and citing *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210, defense counsel argued that such impeachment was improper.[2] The court overruled the defense objection and allowed the State to question Lamb more directly about the guilty plea.

---

[2] In *Ashton,* this Court held that the only prior convictions with which a witness normally may be impeached are crimes which would have rendered a witness incompetent at common law and those involving dishonesty and false statement. The first category of crimes, often referred to as "infamous," are: treason, murder, rape, arson, burglary, robbery, kidnapping, forgery and wilful and corrupt perjury. *Ashton,* 258 Ind. at 63, 279 N.E.2d at 217; Ind. Code § 34–1–14–14 (1986 Repl.)

Although Lamb's argument on this issue is difficult to ascertain, he appears to argue that counsel was ineffective for calling him as a witness. Lamb seems to contend that counsel should have known that the trial court would admit evidence of the guilty plea. Lamb simply loses on this point. While the order *in limine* was not a final ruling, *Hadley v. State* (1986), Ind., 496 N.E.2d 67, it constituted a preliminary indication to the parties that the evidence would not be admitted. This ruling was supported by the fact that the crime of assault and battery with intent to kill is not one of the nine "infamous" crimes nor is it, on its face, a crime of dishonesty or false statement. Lamb's testimony was crucial to the defense contention that his confessions to police were not truthful.[3] His testimony was the only evidence supporting this claim. Under these circumstances, coun-

sel was not ineffective for calling Lamb to testify.[4]

[3] Lamb testified that his confessions were drafted by police and that he only agreed to sponsor them in exchange for the officers' promises that they would not charge his common-law wife with any crimes.

[4] Lamb also alleges that trial counsel's commission of six other errors, when viewed together, constitutes ineffective assistance. Four of the allegations of error concern counsel's choice of defense witnesses and cross-examination techique (sic); these claims are meritless. The other two allegations involve admission of relatively unimportant documents at trial which were not particularly prejudicial to Lamb. Thus, this claim must fail.

Although he framed a somewhat different argument here on the ineffective assistance of counsel issue than he did before the Supreme Court of Indiana, this court will conclude in an act of generosity to the petitioner that that issue has now been fairly presented in that court.

### IV.

■ As a simple matter, this court does not read the statements of the prosecutor there quoted as violating the presumption of innocence and certainly, the clear instructions that were given to the jury on that subject would obviate any possible error. There was more than enough evidence in this case to overcome the presumption of innocence.

The jury instructions are set out at pages 44–88 of the state record. Particular reference should be to the following state's Instruction Number 7 which was given by the state trial judge at page 50 of the state court record, as follows:

The defendant is presumed to be innocent until the contrary is proved. Where there is a reasonable doubt whether the guilt of the defendant is satisfactorily shown, then such defendant must be acquitted.

The rule of law which throws around the defendant the presumption of innocence and requires the state to establish beyond a reasonable doubt, every materi-al fact averred in the indictment is not intended to shield those who are actually guilty from just and merited punishment but it is a humane provision of the law which is intended for the protection of the innocent, and to guard, so far as human agencies can, against the conviction of those unjustly accused of crime.

Evidence is sufficient to remove reasonable doubt when it is sufficient to convince the judgment of ordinarily prudent men of the truth of a proposition with such force that they would act upon that conviction without hesitation, in their own most important affairs, under circumstances where there was no complusion (sic) or coercion upon them to act at all, then if you are so convinced in this case you will have attained such degree of certainty as excludes reasonable doubt and authorizes conviction.

State court record at page 50.

In Part III of Justice Hunter's opinion 348 N.E.2d at page 4, he stated:

On voir dire examination the prosecutor read each prospective juror the following statement:

"The rule of law which throws around the defendant the presumption of innocence and requires the state to establish beyond a reasonable doubt, every material fact averred in the indictment is not intended to shield those who are actually guilty from just and merited punishment but it is a humane provision of the law which is intended for the protection of the innocent, and to guard, so far as human agencies can, against the conviction of those unjustly accused of crime."

At the time the statement was read appellant objected on the ground that it was an improper statement of the law. As an instruction the statement was approved in *Anderson v. State*, (1885) 104 Ind. 467, 4 N.E. 63. Appellant now argues that the statement was prejudicial in that it tended to dilute the presumption of innocence by asking prospective jurors to ignore it. We believe a better place for this particular statement would have been in an instruction and not in voir dire. We find that an instruction

similar to the above statement was given to the jurors without objection by appellant. Nevertheless, the purpose of voir dire is to determine whether a prospective juror is able to deliberate fairly on the issue of guilt. In this connection, the statement merely explains that the presumption of innocence is not irrebuttable in fact, if the state presents evidence beyond a reasonable doubt. We hold that appellant's in-court objection and the objection raised in appellant's brief are both without merit and do not constitute reversible error.

*Lamb,* 348 N.E.2d at 4. This approach is at odds with the argument made by counsel for the petitioner in Part D of the Traverse filed on March 13, 1989. Instruction Number 7 above quoted more than answers that argument.

The petitioner is here represented by a very able and experienced counsel and a careful examination of the entire record reveals petitioner's failure to demonstrate that he is entitled to any relief under Title 28 U.S.C. § 2254. Therefore, the writ is DENIED. IT IS SO ORDERED.