**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Roger RUTLEDGE, Defendant–Appellant.**

No. 89–2608.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1990.

Decided April 26, 1990.

Bradley W. Murphy, Asst. U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Patrick W. Martin, Quinn, Johnston, Henderson & Pretorius, Peoria, Ill., for defendant-appellant.

Before CUMMINGS, POSNER, and MANION, Circuit Judges.

POSNER, Circuit Judge.

The principal question presented by this appeal is the voluntariness of a confession. After selling a modest quantity of cocaine

(9.47 grams, 83 percent pure) to an undercover agent, Roger Rutledge was indicted by a federal grand jury and then arrested by federal officers and placed in custody in the federal courthouse in Chicago to await his initial appearance before a magistrate. While they were waiting, the officers gave Rutledge, both orally and in writing, the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Rutledge initialed each warning and also signed a waiver of his *Miranda* rights; the voluntariness of the waiver is not in question. The officers then asked Rutledge whether he would be willing to give them a statement. There is disagreement over the exchange that followed. Rutledge testified: "I asked them if the things I was saying was incriminating myself and they kept saying 'No.'" An officer testified: "He asked me about his cooperation. The question was ... [whether] any cooperation that he gave us would be helpful, and I responded by saying that all cooperation is helpful." The district judge, who held that the defendant's confession (which followed this exchange) was voluntary, more or less accepted the government's version, for he said: "I'm sure there was a conversation or a question that he asked concerning how it [anything he told the officers] would be used, and he was told that his cooperation would be helpful." At the same time, the judge acknowledged that the statement was, at least in hindsight, false; as we are about to see, the cooperation that Rutledge tendered by confessing "helped" him to a sentence four to six times longer than he would have received had he kept mum.

Pursuant to a plea agreement in which Rutledge agreed to cooperate with the government and the government agreed to drop one of the charges against him and to bring his cooperation to the attention of the sentencing judge, Rutledge pleaded guilty to the sale for which he had been arrested. The confession he had made after being arrested, however, had revealed that he had dealt in a substantially larger quantity of drugs than the government had suspected or had charged him with dealing, and this revelation that he had engaged in crim-

inal conduct related to the offense to which he had pleaded guilty increased his sentencing exposure under the Sentencing Guidelines from between 12 and 18 months in prison to between 57 and 71 months. The judge sentenced him to 71 months. The appeal challenges the propriety of the judge's relying on the confession to jack up Rutledge's sentence.

We are bound by the judge's finding of who said what; that is a determination of credibility, and can rarely be disturbed on appeal—and not in this case. There is nothing inherently incredible about the officer's version of what was said, though it required some prompting to get him to say it. But we make an independent judgment as to whether, all circumstances considered, the confession that Rutledge made after waiving his right to remain silent was voluntary and therefore admissible. *Colorado v. Connelly*, 479 U.S. 157, 169–70, 107 S.Ct. 515, 523–24, 93 L.Ed.2d 473 (1986).

*United States v. Hawkins*, 823 F.2d 1020, 1022 (7th Cir.1987), is the authority in this circuit that the appellate court must determine for itself the voluntariness of a confession. The soundness of the holding has been questioned within the circuit, however, *Wilson v. O'Leary*, 895 F.2d 378, 383 (7th Cir.1990); *Weidner v. Thieret*, 866 F.2d 958, 961 (7th Cir.1989); *Sotelo v. Indiana State Prison*, 850 F.2d 1244, 1253–55 (7th Cir.1988) (concurring opinion), and both *Wilson* and *Weidner* say the holding is open to reexamination. Although it is not unheard of to require an appellate court to make a finding of fact, *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), it is odd. Its oddness is only partly dispelled by observing that whether a confession is voluntary is not really a fact, but a characterization. There is indeed no "faculty of will" inside our heads that has two states, on and off, such that through careful reconstruction of events the observer can determine whether the switch was on when the defendant was confessing. But merely to observe that voluntariness is not a fact does not answer the question whether the determination of

voluntariness should be made by the trial judge, by the jury (if there is one), or by the appellate court. *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), holds, it is true, that in a federal habeas corpus proceeding brought by a state prisoner the district judge must make an independent determination of whether the prisoner's confession had been voluntary, rather than deferring to the state court's determination, as 28 U.S.C. § 2254(d) requires in the case of findings of fact. But based as it is on an interpretation of the habeas corpus statute, *Miller* casts only an oblique ray of light on the question whether a court of appeals in a federal criminal case should determine the voluntariness of a confession. Since the determination will vary with the circumstances of the case, uniformity of decision—an important goal of appellate decision-making—may be neither attainable nor important. And as noted in *Bryan v. Warden,* 820 F.2d 217, 219–20 (7th Cir. 1987), *Miller* is in considerable and unfruitful tension with the equally well established principle that the voluntariness of a waiver of *Miranda* rights and of other rights is a question of fact governed by the clearly erroneous rule of appellate review.

But this is all by the way. The government (as if oblivious to our opinions even when they are favorable to it) does not question the validity of *Hawkins,* and we must therefore make an independent determination of the voluntariness of Rutledge's statement. It is a task complicated by the fact that courts have not been successful in devising a standard that will determine in a consistent fashion when confessions should be excluded on grounds of involuntariness. Of course if the confession is *unreliable,* it should go out, along with other unreliable evidence. It is on this basis that confessions extracted by torture are excluded. But in most cases in which a confession is sought to be excluded because involuntary, there is little likelihood that the inducements placed before the defendant were so overpowering as to induce an untrue confession. The courts in such cases retreat to the proposition that a confession, to be admissible, must be the product of a free choice. *Watts v. Indiana,* 338 U.S. 49, 53, 69 S.Ct. 1347, 1357, 93 L.Ed. 1801 (1949) (plurality opinion), illustrates the approach, but it is just the faculty of will approach, and, as the courts are beginning to suspect, *Colorado v. Connelly, supra,* 479 U.S. at 170, 107 S.Ct. at 523, it leads nowhere. Taken seriously it would require the exclusion of virtually all fruits of custodial interrogation, since few choices to confess can be thought truly "free" when made by a person who is incarcerated and is being questioned by armed officers without the presence of counsel or anyone else to give him moral support. The formula is not taken seriously. *Connelly* may have driven the stake through its heart by holding that a confession which is not a product of the defendant's free choice—maybe he was so crazy, retarded, high on drugs, or intoxicated that he did not even know he was being interrogated—is admissible so long as whatever it was that destroyed the defendant's power of choice was not police conduct. In any event, very few incriminating statements, custodial or otherwise, are held to be involuntary, though few are the product of a choice that the interrogators left completely free.

An alternative approach, which is implied by *Connelly* and may well describe the courts' actual as distinct from articulated standard, is to ask whether the government has made it impossible for the defendant to make a *rational* choice as to whether to confess—has made it in other words impossible for him to weigh the pros and cons of confessing and go with the balance as it appears at the time. This approach, sketched in *Weidner v. Thieret, supra,* 866 F.2d at 963–64, implies, for example, that if the government feeds the defendant false information that seriously distorts his choice, by promising him that if he confesses he will be set free, or if the government drugs him so that he cannot make a conscious choice at all, then the confession must go out. Rutledge appeals to this standard in contending that he could not make a rational choice whether to confess unless he knew whether the confession would expose him to a heavier sentence;

that the government interfered with his choice by falsely stating that cooperation could only help, and not hurt, him; that in short the false statement destroyed the information that he required for a rational choice.

If the officers, fully intending to use anything Rutledge said against him, had said to him, "Tell us all you know about the drug trade, and we promise you that nothing you tell us will be used against you," then he would have a strong argument that any ensuing confession had been extracted by fraud and was involuntary. *Quartararo v. Mantello*, 715 F.Supp. 449, 460–61 (E.D.N.Y.), aff'd without opinion, 888 F.2d 126 (2d Cir.1989). For in our hypothetical case the officers would have deflected Rutledge from weighing the pros and cons of confessing and going in the direction that the balance leaned. Alternatively, Rutledge could in our hypothetical case hold the government to its promise, and could do so whether or not the promise was fraudulent.

At the other extreme, if the officers had merely promised Rutledge to inform the prosecutors of his cooperation, or had stated that, other things being equal, cooperation is helpful to an accused, or had reminded him that while cooperation might help him the government would not hesitate to use anything he said against him, there could be no serious argument that he had been coerced to confess. Our case is in between. The challenged statement was not quite a promise not to use anything Rutledge said against him; at the same time, as the judge found, it was not quite truthful.

■ Rutledge does not deny having been given the *Miranda* warnings and having understood them; the voluntariness of his waiver of his *Miranda* rights, as distinct from the voluntariness of his confession, is not contested. One of the warnings is that anything you say may be used against you. When moments after signing his waiver of *Miranda* rights Rutledge asked whether cooperation would help him, he could not have meant by this—having just been told that anything he said could be used against him—to be asking whether he could confess with impunity to mass murder. He could not have meant to be asking whether, if he confessed to being the head of a Colombian drug cartel, the government would do its best to get him a lighter sentence for the crimes for which he had been indicted. He may have been asking just whether the *fact* of his confessing would receive consideration as cooperation. The officers said it would. This was not, so far as appears, a lie when made (which means, it was not a lie at all). The government later agreed to drop one of the charges against Rutledge and it informed the judge of his cooperation. Government is not forbidden to "buy" information with honest promises of consideration. *Fare v. Michael C.*, 442 U.S. 707, 727, 99 S.Ct. 2560, 2573, 61 L.Ed.2d 197 (1979); *United States v. Pace*, 898 F.2d 1218, 1246 (7th Cir.1990); *Cole v. Lane*, 830 F.2d 104, 108–09 (7th Cir.1987) (per curiam); *United States v. Springer*, 460 F.2d 1344, 1347 (7th Cir.1972); *United States v. Pelton*, 835 F.2d 1067, 1073 (4th Cir.1987). Such an offer requires the accused to weigh the cost in giving the government information about his criminal activity that it might otherwise not discover against the benefit in possibly receiving brownie points for cooperation. Rutledge may have thought that the government would discover the incriminating information anyway; if so, he would rationally rate the cost of cooperation as slight and the benefit as larger even though small in absolute terms, and he would confess. The government was not required to tell him that if he was wise he would shut up because it had no other source of information about the extent of his illegal activities. The policeman is not a fiduciary of the suspect. The police are allowed to play on a suspect's ignorance, his anxieties, his fears, and his uncertainties; they just are not allowed to magnify those fears, uncertainties, and so forth to the point where rational decision becomes impossible.

■ An alternative interpretation of the officer's statement, however, is that it promised Rutledge a *net* benefit from spill-

ing the beans. If this was the promise, it is unlikely that the officer intended to keep it; and if he did not, then the statement was fraudulent. But it was the sort of minor fraud that the cases allow. Far from making the police a fiduciary of the suspect, the law permits the police to pressure and cajole, conceal material facts, and actively mislead—all up to limits not exceeded here. *United States v. Guerrero*, 847 F.2d 1363, 1366–67 (9th Cir.1988).

There was no net benefit to Rutledge, clearly; was there *any* benefit? We have said there was, yet against this it can be argued that the agreement to drop one of the charges against Rutledge and to bring his cooperation to the judge's attention was in exchange not for his confessing to a larger role in the drug trade but simply for his forgoing his right to a trial. If so, then it can be argued that the confession helped him not at all—the government had reneged on its promise that his cooperating would help him. The defendant's forgoing his right to trial is an important consideration in virtually every plea bargain, because the government does not have the resources to try every criminal defendant. But cooperation in the investigation of other offenders is also an important consideration in plea bargaining, and there is no reason to doubt that it was important here. A better argument is that the written plea agreement recites as the consideration for dropping the charge that was dropped Rutledge's cooperation in testifying against and otherwise helping the government bring his accomplices to justice; the agreement makes no mention of the confession. But the confession was the beginning of the cooperation, for it was the confession that revealed that Rutledge was involved in more than bush-league drug dealing. Had Rutledge not revealed his part in a larger drug operation his cooperation would have been less valuable—would not have commanded as high a "price" in the plea-bargaining market.

■ Although we have been treating this case so far as one in which the defendant's confession is used as evidence to convict him, in fact Rutledge was convicted only of the sale to the undercover agent—not of the broader activities to which he confessed. (The count that was dropped was conspiracy to distribute the small quantity of drugs sold to the undercover agent.) The confession was used to jack up his sentence. As an original matter one might argue that an involuntary confession could be used for *this* purpose, since a wide variety of otherwise inadmissible evidence is traditionally usable when it comes to deciding on the proper sanction for the crime of which the defendant has been duly convicted. But the Supreme Court has scotched the possibility, *Estelle v. Smith*, 451 U.S. 454, 462–63, 466–68, 101 S.Ct. 1866, 1872–73, 1874–76, 68 L.Ed.2d 359 (1981), which anyway is of no importance in this case, since Rutledge's confession was voluntary.

The sentencing context is relevant, however, because Rutledge is trying to gain mileage from section 1B1.8(a) of the Sentencing Guidelines, which provides that "where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, *and the government agrees that self-incriminating information so provided will not be used against the defendant*, then such information shall not be used in determining the applicable guideline range." The section is inapplicable, because the condition we have italicized was not satisfied. The officer who questioned Rutledge after he was arrested promised (if it was a promise) that, if he cooperated, his cooperation would be helpful to him; it did not promise him that if in cooperating he confessed to other crimes the information would not be used against him. *United States v. Hallam*, 723 F.Supp. 66, 72 (N.D.Ind.1989); compare *United States v. Shorteeth*, 887 F.2d 253 (10th Cir.1989). Such a promise would of course be inconsistent with the *Miranda* warnings, which Rutledge had just received, and the officer did not purport to rescind those warnings.

We are inclined to think, by the way, that the italicized language in the Guidelines should be interpreted narrowly. The provision on agreements is addressed to prosecutors rather than to police, and it would

wreak much havoc with prosecutorial prerogatives if casual inducements by police officers were treated as enforceable plea agreements. It is true that the provision speaks of "the government" rather than of the Department of Justice, and that it is not limited to formal plea bargaining. Yet, although Rutledge had been indicted, the interrogation of Rutledge followed immediately upon his arrest and before there were even the glimmerings of plea negotiations. So far as appears, no prosecutors were present, and it is certain that Rutledge was questioned not by prosecutors but by ordinary drug enforcement agents. It is certain too that the interrogating agents were not mindful of the possible interplay between statements that they might make to him and his entitlements under the Sentencing Guidelines.

If all we have said thus far is wrong, there is still the language of the plea agreement to be considered. The agreement states that "no promises or representations have been made, nor agreements reached, other than those set forth in this agreement." This is the equivalent of an integration clause in a regular contract, and negates any effort by Rutledge either to undo the terms of the plea agreement by pointing to an alleged promise, made before the agreement was signed, to reward him for his cooperation, or to use that promise as the basis for an agreement that his related criminal conduct would not be used to increase his sentence. So even if the confession was extracted by a promise, that promise merged into the plea agreement; and the government did not violate the plea agreement. *Hartman v. Blankenship*, 825 F.2d 26, 29 (4th Cir.1987).

■ There is one other issue. In order to use the drug sales to which the defendant confessed to increase his sentence for the sale to the undercover agent, the judge had under the Guidelines to find that they "were part of the same course of conduct or common scheme or plan as the" sale of which he was convicted. § 1B1.3(a)(2). He did find this, and his finding is not clearly erroneous and therefore binds us. *United States v. Vopravil*, 891 F.2d 155 (7th Cir.

1989); *United States v. Gooden*, 892 F.2d 725, 728–29 (8th Cir.1989).

A<small>FFIRMED</small>.