**James Arnold SMITH, Petitioner–Appellant,**

v.

**Jack R. DUCKWORTH and Indiana Attorney General, Respondents–Appellees.**

**No. 87–2670.**

United States Court of Appeals, Seventh Circuit.

Argued June 14, 1988.

Decided Sept. 6, 1988.

---

**8.** See n. 6 *supra*.

Kathryn B. O'Neall O'Neall & O'Neall, Remington, Ind., for petitioner-appellant.

Michael Schoening, Deputy Atty. Gen., Indianapolis, Ind., for respondents-appellees.

Before CUDAHY, FLAUM, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

James A. Smith appeals from the district court's denial of his petition for a writ of habeas corpus. We remand to the district court for an evidentiary hearing on the issue of the voluntariness of Smith's confession.

## I.

On July 28, 1973, a liquor store in Hammond, Indiana was robbed and its owner, Steve Gabor, was fatally shot. The crime remained unsolved for over a year until September 17, 1974, when Smith voluntarily visited the Hammond police station. Apparently, Smith's initial intent was to admit his participation in several area burglaries. Shortly after he arrived at the station, however, Smith began to discuss the liquor store robbery. Because Smith knew a number of facts, including the caliber of the gun used in the offense, the police incarcerated Smith as a material witness. He remained in jail with no charges lodged against him, until one month later when he confessed to his participation in the shooting.[1]

Smith gave the police a second statement on September 21, 1974. In his first two statements, Smith implicated several area gang members in the commission of the crime. The police continued to detain him until finally, on October 17, 1974, Smith gave a third statement identifying himself as the assailant.[2] In his confession, Smith described the burglary scene in some detail, and explained that he had used shoe

---

1. There is no indication that Smith was brought before a magistrate or given any opportunity to post bond. Furthermore, we are aware of no authority under Indiana law which allows for the incarceration of a material witness to a crime.

2. Three eyewitnesses to the crime described the perpetrator as a black male. Two of them stated that the assailant was large, or of "husky" build. One of them indicated, however, that the murderer was of medium stature. The petitioner is a white male, reportedly of slight build.

polish, soot mixed with water, and an "afro-style" wig to disguise himself as a black man. Smith was then charged with both murder, and murder during the commission of a robbery.

In November 1974, an Indiana state court determined that Smith was incompetent to stand trial.[3] As a result, Smith was committed to the Indiana Department of Mental Health where he remained until he was found competent on March 20, 1980.

Before trial, the defendant moved to suppress his confession. Two of the doctors who had examined Smith in November 1974 testified at the suppression hearing. A psychiatrist, Dr. Frank Hogle, testified that it was highly probable that Smith was insane on October 17, 1974, the date on which Smith gave his confession. Dr. Hogle acknowledged, however, that Smith might have had periods of lucidity. Dr. Peter Gutierrez, a physician, stated that in his opinion, Smith was grossly psychotic on the date he examined Smith, November 24, 1974. Dr. Gutierrez would not speculate as to Smith's mental condition prior to that date. However, based on his reading of Smith's confession, Dr. Gutierrez believed that Smith probably would have been able to sufficiently appreciate his *Miranda* rights to waive them.

Smith also testified at the hearing. He admitted being aware of his actions when he signed the *Miranda* waiver forms before making the October 17 statement. He contended, however, that the police had coerced his confession by threatening to transfer him to the cell block which housed the gang members whom Smith had implicated in his earlier statements. One of the police detectives who had conducted Smith's interrogation denied this accusation. Without making any explicit findings, the court ruled that Smith's confession was admissible.

At trial, Smith's confession was introduced into evidence over the defendant's renewed objection. In addition, at the jury's request, the court provided the statement to the jury during deliberations.[4] On January 8, 1981, the jury convicted Smith of one count of murder and one count of murder during the commission of a robbery. The judge sentenced Smith to life imprisonment.

Smith appealed his conviction to the Indiana Supreme Court, raising two errors. He contested the admission of his October 17 confession into evidence as well as the submission of the exhibit to the jury during deliberations.[5] The state court rejected these arguments and affirmed Smith's conviction. *Smith v. State*, 437 N.E.2d 975 (Ind.1982). Having exhausted his state remedies, Smith filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254.[6] The district court denied his petition on August 27, 1987. This timely appeal followed.

## II.

Smith raises two issues on appeal. First, he argues that in light of the evidence regarding his mental capacity, the waiver of his *Miranda* rights was involuntary. Second, Smith challenges the admission of his confession which he claims was involuntary. The question of the voluntariness of a waiver of *Miranda* rights is separate and differs from the determination of the voluntariness of a confession. *Bryan v. Warden, Indiana State Reformatory*, 820 F.2d 217, 220 (7th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 190, 98 L.Ed.2d 142 (1987). Once it is clear that a defendant has made a knowing and voluntary waiver of his or her *Miranda* rights, the issue then becomes whether the confession itself was voluntary. *Perri v. Director, Department of Corrections, State*

3. Smith has a long history of mental illness for which he has been confined in various hospitals throughout his life.

4. Initially, the parties agreed not to provide any exhibits to the jury. The defendant objected to giving the jury access to his redacted confession.

5. Although in his initial petition for a writ of habeas corpus Smith raised as error the trial court's decision to give the jury access to his confession, he did not raise that issue on appeal.

6. On appeal, Smith was represented by appointed counsel.

*of Illinois,* 817 F.2d 448, 452 (7th Cir.), *cert. denied,* ⸺ U.S. ⸺, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987).

### A.

Turning first to the issue of waiver, Smith acknowledges that he signed a written waiver of his *Miranda* rights. Nonetheless, he argues that his mental condition at the time rendered the waiver legally defective. He points out that neither the trial court nor the Indiana Supreme Court made an explicit finding as to his mental state or the alleged threats by the police. After the pre-trial hearing, however, the trial court allowed the confession to be introduced into evidence. Furthermore, after reviewing conflicting evidence concerning Smith's mental condition, the Indiana Supreme Court found that "the State [had] satisfied its burden of proof" on the issue. *Smith,* 437 N.E.2d at 976.[7]

■ In *Bryan,* this court confirmed that a state court's finding that a defendant waived his or her *Miranda* rights is a factual determination to which federal courts defer under 28 U.S.C. § 2254(d).[8] *Bryan,* 820 F.2d at 219. As *Bryan* noted, a "state trial court is in the best position to look at [the] factual circumstances surrounding the waiver, and to weigh the conflicting testimony." *Id.* See also *Perri,* 817 F.2d at 451 (the determination of a knowing and intelligent waiver is a factual matter). Unfortunately, state courts do not always make explicit determinations. In such instances, *Bryan* suggests that we may rely upon the state court's implicit findings. *Bryan,* 820 F.2d at 220. In this case, the state court's admission of Smith's confession can be viewed as an implicit finding that Smith voluntarily waived his *Miranda* rights. This finding is supported by the record and therefore should not be disturbed.

### B.

■ Smith next asserts that because his involuntary confession was admitted over his objection, he was denied due process of law under the fourteenth amendment. In contrast to the waiver inquiry, the voluntariness of a confession is a question of law which federal courts review *de novo. Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985).[9] To determine whether a confession was voluntary, we examine the "totality of the circumstances" to discover if the confessant's will was overborne. The circumstances which are particularly relevant include:

> the youth of the accused, ...; his [or her] lack of education, ...; or his [or her] low intelligence, ...; the lack of any advice to the accused of his [or her] constitutional rights, ...; the length of detention, ...; the repeated and prolonged nature of the questioning, ...; and the use of physical punishment such as the deprivation of food or sleep....

*Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973) (citations omitted). See also *Culombe v. Connecticut,* 367 U.S. 568, 603, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961).

The Supreme Court has noted that resolution of the voluntariness inquiry does not

---

7. In *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986), the Supreme Court held that the state meets its burden of proof on the waiver of *Miranda* rights if it establishes waiver by a preponderance of the evidence. *See also Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

8. Section 2254 states:
   (d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct....
   28 U.S.C. § 2254(d) (1987). Of course, the presumption of correctness is not honored if the "factual determination is not fairly supported by the record." 28 U.S.C. § 2254(d)(8).

9. *Miller* recognized, however, that state court findings on "subsidiary questions" which underlie the voluntariness issue are owed the § 2254(d) presumption of correctness. *Miller,* 474 U.S. at 117, 106 S.Ct. at 453.

turn on the defendant's mental state. In *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), the defendant contended that his confession was involuntary due to his mental condition.[10] The Court held that a due process inquiry into the voluntariness of a confession turns on the level of police coercion—"while mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Id.* at 521. Thus, coercive police activity is the essential predicate to a finding that a confession is involuntary. *Id.* at 522.

Smith asserts that the police engaged in coercive tactics designed to extract an involuntary confession from him. He stresses that he was unlawfully incarcerated as a material witness for a full month prior to confessing. Unfortunately, because the suppression hearing focused on Smith's mental capacity at the time he confessed, the record is of little help in evaluating the impact of this important factor. Consequently, the record contains scant information on the nature of Smith's incarceration and its duration. This significant factor must be considered in evaluating the totality of the circumstances that led to Smith's confession.

Given the paucity of evidence in the record, we are unable to ascertain the effect of Smith's apparently unlawful incarceration on the voluntariness of his confession, nor can we determine what, if any, coercive tactics were used on Smith during his confinement. Accordingly, we remand to the district court for an evidentiary hearing on the question of the legality and duration of Smith's custody and its effect on the voluntariness of his confession.

### III.

In sum, we uphold the Indiana court's implicit determination that Smith waived his *Miranda* rights, but remand for an evidentiary hearing to determine whether Smith gave a voluntary confession.

---

10. Soon after the confession was given, Connelly was found incompetent to stand trial. *Connelly*, 107 S.Ct. at 519. A psychiatrist testifying at the suppression hearing stated that the defendant's confession was probably prompted by his psychosis. *Id.*