James Arnold SMITH,
Petitioner–Appellee,

v.

Jack R. DUCKWORTH, and the
Indiana Attorney General,
Respondents–Appellants.

No. 89–3205.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1990.

Decided Aug. 23, 1990.

---

Kathryn Butler O'Neall, O'Neall & O'Neall, Remington, Ind., for petitioner-appellee.

Michael A. Schoening, Deputy Atty. Gen., Linley E. Pearson, Atty. Gen., Indianapolis, Ind., for respondents-appellants.

Before WOOD, Jr., EASTERBROOK, and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The government appeals from the district court's grant of James Arnold Smith's petition for a writ of habeas corpus. This is a most unfortunate situation because the intervention of time now prevents a factual exploration of a critical pretrial issue, and a deserved state retrial may not be feasible.

## I. BACKGROUND

On July 28, 1973, Steve Gabor was fatally shot during a robbery of his Hammond, Indiana, liquor store. For his role in the incident, Smith was convicted of one count of murder and one count of murder during the commission of a robbery. He was sentenced to life imprisonment.[1] The facts surrounding Smith's arrest and subsequent trial are detailed in *Smith v. Duckworth*, 856 F.2d 909 (7th Cir.1988) ("*Smith I*"). We will refer to the facts where necessary to our discussion rather than again recount them fully here.

After exhausting his state court remedies, Smith filed a *pro se* petition for a writ of habeas corpus. The district court denied his petition and Smith appealed.[2] In his appeal, Smith contended both that his waiver of his *Miranda* rights was involuntary and that his confession, because it was involuntary, should not have been admitted in evidence. This court found that Smith had voluntarily waived his *Miranda* rights but remanded to the district court for an evidentiary hearing "on the question of the legality and duration of Smith's custody and its effect on the voluntariness of his confession." This was necessary because of an inadequate factual record and a "paucity of evidence" concerning "Smith's ap-

---

1. Under the Indiana sentencing scheme in place at that time, a person sentenced to life imprisonment was eligible for parole after 15 years.

2. Smith was represented by appointed counsel on his first appeal. He is currently represented by that same counsel.

parently unlawful incarceration." *Smith I,* 856 F.2d at 913. This court was not advised at the time of *Smith I* that both detectives who had questioned Smith were deceased. On remand, the district court held an evidentiary hearing on June 12, 1989. Smith testified at the hearing; his testimony was consistent with his earlier testimony at the suppression hearing in its essential respects.[3] The state presented no new evidence but instead moved for dismissal of Smith's petition under Rule 9(a) because its key witnesses—the detectives who had interrogated Smith during his thirty-day confinement—were no longer alive. Following the evidentiary hearing, the district court granted Smith's petition for a writ of habeas corpus, and the state appealed. We have jurisdiction under 28 U.S.C. § 1291 and now affirm.

## II. ANALYSIS

The state raises two issues in its appeal. First, the state argues that it was unduly prejudiced in its ability to respond to the allegations in Smith's petition because of Smith's delay in filing his habeas petition. Second, the state contends that there was not sufficient evidence before the district court for that court to find that Smith's confession was involuntary. We consider each of these arguments in turn.

### A. *Undue Prejudice*

The Indiana Supreme Court affirmed Smith's conviction in 1982. 437 N.E.2d 975. Smith filed his habeas corpus petition in October 1986. The state insists that this four-year delay warrants the dismissal of Smith's petition.[4]

Rule 9(a) of the Rules Governing Section 2254 Cases, provides:

*Delayed Petitions*

A petition may be dismissed if it appears that the state of which the respondent is

an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

The Advisory Committee Note to Rule 9(a) explains that the rule "is intended to minimize abuse of the writ of habeas corpus by limiting the right to assert stale claims. . . ." Rule 9(a) thus protects the state's legitimate interest that it will not be required, without due cause, to defend convictions that occurred years earlier. *Jessup v. United States Parole Comm'n,* 889 F.2d 831, 834 (9th Cir.1989). The Advisory Committee Note states that the limitation in Rule 9(a) is not a statute of limitations but rather is based on the equitable doctrine of laches. The Note states further that the permissive language contained in Rule 9(a) ("A petition may be dismissed . . .") allows the court considering the petition to exercise discretion when evaluating the equities of the particular case.

It is well settled that the mere lapse of time is not a sufficient ground upon which to base a dismissal under Rule 9(a). *See, e.g., Jessup,* 889 F.2d at 834; *Strahan v. Blackburn,* 750 F.2d 438, 441 (5th Cir.), *cert. denied,* 471 U.S. 1138, 105 S.Ct. 2683, 86 L.Ed.2d 700 (1985); *Sutton v. Lash,* 576 F.2d 738 (7th Cir.1978). "The doctrine of laches requires not only unreasonable delay but also that the delay work to the detriment of the other party." *Jessup,* 889 F.2d at 834 (citation omitted). To establish prejudice under Rule 9(a), the state must show that the petitioner's delay in filing the habeas petition has prejudiced the state in its ability to respond. *Strahan,* 750 F.2d at 441. Rule 9(a) requires the state to make a particularized showing of prejudice

---

**3.** The state contends that Smith gave inconsistent statements at the suppression and evidentiary hearings regarding the person from whom he received information about the crime. We have reviewed the record and find this contention to be without merit.

**4.** The district court stated that given this court's mandate, the argument that Smith's habeas petition should be dismissed because of delay was not available to the state. Because any possible grounds for dismissal based on grounds of delay would only have become apparent when we remanded this case for an evidentiary hearing, we consider the state's Rule 9(a) argument.

before a habeas petition may be dismissed because of delay. *Hannon v. Maschner*, 845 F.2d 1553, 1555 (10th Cir.1988); *Strahan*, 750 F.2d at 441. If the state succeeds in proving prejudice, the burden shifts to the petitioner to disprove prejudice or to demonstrate that the delay was based on grounds that would not have been known through the petitioner's exercise of due diligence. *Hannon*, 845 F.2d at 1555; *Strahan*, 750 F.2d at 441; Rule 9(a).

██ The state contends that it is prejudiced because its key witnesses are unavailable to testify. Specifically, the state argues that because detectives Robert Townsell and James Mullens, who investigated and interrogated Smith in 1974, are no longer alive,[5] the state is unable to contest any of Smith's allegations concerning the events surrounding his interrogation during his month-long confinement. These two detectives, the state insists, are the only persons who can testify as to the custody's effect on the voluntariness of Smith's confession.[6]

The unavailability of witnesses is clearly one of the circumstances that Rule 9(a) is intended to address. Nevertheless, the circumstances of this case weigh against dismissing Smith's petition.

It is undisputed that Smith initially visited the Hammond police station on September 17, 1974, to admit having participated in several burglaries. After he began to discuss the liquor store robbery in which Steve Gabor was killed, the police incarcerated him as a material witness. Smith was held for thirty days, finally confessing to the Gabor murder on October 17, 1974. During this time, Smith was not charged with any crime. He was not brought before a magistrate or given any opportunity to post bond or to consult with counsel.[7]

Smith subsequently challenged the voluntariness of his confession in state court, and three suppression hearings were held between May and December of 1980. Although the suppression hearings focused on Smith's mental state at the time he confessed, the issue in those hearings was whether his confession was voluntary. The state had the opportunity during those hearings to present the evidence that it deemed relevant to the determination of the admissibility of Smith's confession. The record shows that both Townsell and Mullens testified at the suppression hearings.[8] While courts have found prejudice to the state where records or transcripts have been lost or destroyed during the delay, *see e.g., Strahan*, 750 F.2d 438, 443 (state prejudiced in responding to petitioner's allegations that material missing from trial transcript because court reporter died and notes lost); *see also id.* at 441 n. 4 (collecting cases), the testimony of Townsell and Mullens has been preserved in its entirety.[9]

We therefore have difficulty in seeing how the state has been prejudiced in this instance. Detectives Townsell and Mullens were available to testify and did testify at the suppression hearings; their testimony has been preserved in the record. There is nothing to suggest that had the detectives been available to testify at the evidentiary hearing on remand, they would have supplemented the testimony they gave at the suppression hearings in a way favorable to the state.

---

5. Townsell died on February 13, 1987, and Mullens died on March 19, 1987.

6. A third person, Joe Charchak, whom Smith but not the state claims was present, stated in his affidavit that he does not recall Smith himself or being present at his interrogation.

7. In *Smith I*, we stated that we were unable to find any authority under Indiana law allowing a material witness to a crime to be incarcerated. 856 F.2d at 910 n. 1. Because the state indicated a similar lack of knowledge at oral argument, we assume that no such authority exists.

8. Townsell testified at the hearing held on June 18, 1980; Mullens testified at the hearing held on November 20, 1980.

9. The district court stated that the testimony of Townsell and Mullens had not been fully preserved. At oral argument, however, the state indicated that there was nothing missing from the detectives' testimony. Our review of the transcripts from these hearings also indicates that none of Townsell's and Mullens's testimony has been lost.

The state at oral argument, while acknowledging that there was no statute authorizing the incarceration of a material witness, argued that Smith's confinement could have been the result of his request for some sort of protective custody—a supposition that could not be pursued, the state suggested, because Townsell and Mullens were no longer available to testify. This argument is unpersuasive. We can find no suggestion in the record, and the state initially had the opportunity to explore this possibility while the detectives were still alive, that Smith was held for reasons of his own choosing. Mere speculation of this sort does not satisfy Rule 9(a)'s requirement that the state show particularized prejudice.

We therefore conclude that the state is not entitled to a dismissal of Smith's habeas petition under Rule 9(a). Because we hold that the state has failed to make a sufficient showing of prejudice, it is unnecessary for us to determine whether Smith's delay in filing his petition was reasonable, although we note that for a significant portion of this time, he was considered to be mentally incompetent.

### B. *Sufficiency of the Evidence*

The state next argues that there was not sufficient evidence before the district court for that court to find that Smith's confession was involuntary.

Under *Miller v. Fenton*, 474 U.S. 104, 112, 106 S.Ct. 445, 450–51, 88 L.Ed.2d 405 (1985), a habeas petitioner is entitled to a federal district court's de novo review of the voluntariness issue. We have interpreted *Miller* as requiring de novo appellate review of the district court's decision on voluntariness, *see United States v. Hawkins*, 823 F.2d 1020, 1022–23 & n. 1 (7th Cir.1987). This standard of review has recently been questioned in this circuit, *see United States v. Rutledge*, 900 F.2d 1127, 1128–29 (7th Cir.1990); *Weidner v. Thieret*, 866 F.2d 958, 961 (7th Cir.1989); *Sotelo v. Indiana State Prison*, 850 F.2d 1244, 1253–55 (7th Cir.1988) (concurring opinion). Because we conclude that the state has failed to meet its burden under either a de

novo or a deferential standard of review, it is unnecessary for us to resolve the issue. *See Andersen v. Thieret*, 903 F.2d 526, 529 (7th Cir.1990); *Sotelo*, 850 F.2d at 1247 n. 4; *see also Rutledge*, 900 F.2d at 1129 (declining to decide question where parties did not challenge the correct standard of review).

In determining whether a confession was voluntary, a reviewing court must examine "the totality of the circumstances" to discover if the confesser's will was overborne. Factors relevant to this inquiry include: "the youth of the accused ...; his [or her] lack of education, ...; or his [or her] low intelligence, ...; the lack of any advice to the accused of his [or her] constitutional rights, ...; the length of detention, ...; the repeated and prolonged nature of the questioning, ...; and the use of physical punishment such as the deprivation of food or sleep...." *Smith I*, 856 F.2d at 912 (quoting *Scheneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973) (citations omitted)). After examining the totality of the circumstances so far as they are known or can be determined and in view of *Smith I*, we must conclude that Smith's confession was not voluntarily made.

Smith was 24 years old at the time he was taken into custody by the Hammond City police. He had received little formal education. In addition to the procedural irregularities surrounding Smith's incarceration to which we have already referred, the record reveals that Smith was interrogated by Townsell and Mullens on three separate occasions while he was being held. The total time of questioning was approximately nine hours. In the first two statements given to the police on September 17 and September 21, 1974, Smith implicated several members of a black area gang known as "the Family" in the murder of Steve Gabor. On October 17, Smith was questioned by the officers for over an hour before he ultimately confessed to Steve Gabor's murder. In his confession, Smith described the scene of the crime and said that he had disguised himself as a black man by blackening his face with shoe pol-

ish and soot mixed with water, and wearing an "afro-style" wig.[10] Mullens's report describing the interrogation session on October 17 indicates that Smith had been less than willing on that date to talk to them about the liquor store robbery. The report states that Mullens and Townsell questioned Smith for over an hour and Smith refused to talk, that Smith again refused to talk, and that Smith "kept his mouth shut." At the suppression hearing, Mullens acknowledged that they questioned Smith further after he refused to admit guilt in the incident involving Gabor.

The record also shows that Smith initially was housed in the same cell block as Andy Williams and James Young, members of "the Family" whom Smith had implicated in his first two statements to the police. At the suppression hearing, Smith claimed that his confession was coerced by police who threatened to transfer him back to that cell block, an allegation that Townsell denied. Testimony of Andy Williams at the suppression hearing shows that there was some basis for Smith's fears for his safety. Williams stated that Smith had been put in the same cell as Young and himself and that Young had "jumped on Mr. Smith."

Additionally, even the most cursory look at Smith's mental history reveals a consistent pattern of mental instability. Smith had been in and out of various mental institutions prior to the events giving rise to this action. In November 1974, five weeks after his confession, Smith was found incompetent to stand trial. The psychiatrist who examined Smith that November testified that although Smith might have had lucid periods, it was highly probable that Smith was insane when he confessed on October 17, 1974. The physician who also examined Smith at that time stated that in his opinion Smith was grossly psychotic on November 24, 1974, but declined to speculate on Smith's mental condition prior to that date. Smith spent from 1974 to 1980 in the custody of the Indiana De-

partment of Mental Health. In the four-year interval between the Indiana Supreme Court's denial of his appeal in 1982 and the filing of his habeas petition in 1986, Smith was transferred from prison to the mental facilities of the Indiana Department of Correction on two occasions. In its June 1989 Order following the evidentiary hearing in which Smith testified, the district court stated that there could be no doubt that Smith was "psychologically an unstable person."

We recognize of course that mental instability is not itself sufficient to make a confession involuntary. The Supreme Court has made clear that the voluntariness of a confession does not hinge on a criminal defendant's mental state. *Colorado v. Connelly*, 479 U.S. 157, 163–67, 107 S.Ct. 515, 519–22, 93 L.Ed.2d 473 (1986). Instead, the voluntariness of a confession depends on the level of police coercion. *Id.* at 167, 107 S.Ct. at 522; *see also Perri v. Director, Dep't of Corrections*, 817 F.2d 448, 452 (7th Cir.), *cert. denied*, 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987).

Nonetheless, while a finding of involuntariness cannot be predicated solely upon Smith's mental instability, his mental state is relevant "to the extent it made him more susceptible to mentally coercive police tactics." *Andersen*, 903 F.2d at 530 n. 1. As we observed in *Weidner*, the defendant's capacity for rational choice is an important factor in determining whether the conditions of questioning prevented the defendant from making a rational choice. *Weidner*, 866 F.2d at 964. It takes less in terms of threats or other means of inducing fear to interfere with the deliberative processes of one whose capacity for rational choice is limited than it takes to affect the deliberative processes of one whose capacity is not so limited. *Id.*

Looking as we must at the totality of the circumstances so far as they can be determined, we are forced to affirm the district

---

**10.** Three eyewitnesses to the murder described the assailant as a black man. Two said that the assailant was large, or of "husky" build; one said he was of medium build. Smith is a white male, reportedly of slight build. It is also inter-

esting that while Smith identified the gun used in the murder in one of his earlier statements to the police, ballistics showed it was not in fact the weapon used to kill Steve Gabor.

court's order granting Smith's petition for a writ of habeas corpus. That court also found it had no choice in view of *Smith I* but to grant the petition. The district court's decision is therefore AFFIRMED.

In view of the district court's opinion about Smith's mental state, we would expect the State of Indiana, regardless of possible retrial, to take whatever steps are available in Indiana to treat Smith and to protect the public.