**Roy DUMAS, Petitioner,**

v.

**Walter KELLY, Superintendent, Attica Correctional Facility, Respondent.**

No. 97–CV–2210(JG).

United States District Court,
E.D. New York.

June 6, 2000.

Philip R. Edelbaum, New York City, for petitioner.

Richard A. Brown, District Attorney, Queens County, Kew Gardens, NY by John M. Castellano, Peter Mason, Assistant District Attorneys, for respondent.

## MEMORANDUM AND ORDER

GLEESON, District Judge.

Roy Dumas has filed a petition for a writ of habeas corpus, *see* 28 U.S.C. § 2254, contending that his counsel was constitutionally ineffective for failing to file a notice of appeal. Finding that Dumas has failed to exhaust this claim in state court, I dismiss the petition.

## BACKGROUND

In April 1983, Roy Dumas was convicted after a jury trial of one count of murder in the second degree and one count of arson in the second degree. On May 27, 1983, he was sentenced to concurrent terms of 20 years to life on the murder count and 12 and one-half to 25 years for the arson count. At the sentencing, Dumas was represented by attorney Sidney Guran. During those proceedings, Guran indicated to the Court that he planned to make a post-conviction motion to set aside the verdict. (Sentencing Transcript, *People v. Dumas,* Supreme Court, County of Queens, May 27, 1983, at 7.) At the end of the proceeding, Dumas was advised by the clerk that he had a right to appeal; that he had to file a notice of appeal within 30 days; and that an attorney would be appointed for him if he could not afford to hire one. (*Id.* at 9–10.) As discussed more fully below, Dumas and Guran discussed an appeal at this time. As was later discovered, however, no notice of appeal was filed.

Dumas wrote to Guran and the clerk of the Appellate Division, Second Department in January 1987 to check on the status of his appeal. (Affidavit of Defendant in Support of Motion for Extension of Time for Taking Appeal ("Dumas § 460.30 Affidavit"), ¶ f.) In March 1987, Dumas received a letter from the Appellate Division advising him that there was no record of an appeal in his case. (*Id.,* ¶ g.) On May 2, 1987, Dumas filed a motion in the Appellate Division for an order extending his time for filing a notice of appeal. Dumas made the motion under New York

Criminal Procedure Law § 460.30, which allows a defendant who wishes to appeal but did not file notice within the requisite period to seek permission to file a late notice. *See id.* § 460.30(1). There are several grounds for such a motion, one of which is "improper conduct, death or disability of the defendant's attorney." *Id.* A motion under § 460.30 must be filed "with due diligence" after expiration of the time for filing notice of appeal, but in no case more than one year after that date. *See id.*

In his motion papers, Dumas said that on May 20, 1983,[1] Guran had told Dumas that Guran would file a notice of appeal. (Dumas § 460.30 Affidavit, ¶ b.) Dumas stated that he had not sought a status report on his appeal until 1987 because Guran had told him there would likely be no decision for four to five years. (*Id.*, ¶ f.) The district attorney took no position on Dumas's application. (Affidavit and Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus at 3.) In an order dated June 23, 1987, the Appellate Division denied Dumas's § 460.30 motion without explanation. On March 17, 1988, the Court of Appeals dismissed defendant's application for leave to appeal, saying that the Appellate Division's order was not appealable.

On September 4, 1987, before the Court of Appeals had acted, the defendant filed a motion in the Supreme Court pursuant to New York Criminal Procedure Law § 440.10 to vacate his judgment of conviction. In support of that motion, Dumas argued that he had been deprived of the effective assistance of counsel by his attorney's failure to file a notice of appeal. He repeated his contention that Guran had assured him that Guran would file a notice of appeal, and he included affidavits from his mother and sister in which they said Guran had told them the same thing. Dumas asked the court to vacate his judgment of conviction and resentence him on the original guilty verdict, thus allowing him to have a direct appeal. In the alternative, Dumas requested a hearing on his counsel's actions. The district attorney opposed Dumas's motion, arguing, *inter alia,* that Criminal Procedure Law § 460.30 provided the exclusive means for seeking permission to file a late notice of appeal and that Dumas had already filed (and lost) a § 460.30 motion.

Justice Joseph G. Golia of the Supreme Court, Queens County, ordered an evidentiary hearing, which took place on March 14, 1988. At the hearing, Dumas was represented by assigned counsel. Dumas testified that Guran had assured him that he would file the notice of appeal, while advising Dumas that another attorney would actually handle the appeal. (Transcript of § 440.10 Hearing at 8.) He said that he did not hear from Guran again until he wrote to him in 1987 inquiring about the status of his appeal. (*Id.* at 11.) Dumas's mother and sister testified that Guran told them after the sentencing that he would file a notice of appeal within 24 hours and that if they had not heard from him by then to contact him. (*Id.* at 27, 37.) Both testified that they tried to follow up with Guran in person and by phone but that he was never in his office and never returned phone calls. (*Id.* at 27–28, 38.)

The court also received an affirmation from Guran, who reported that he had retired to Florida after having been suspended from practice due to his physical condition. (Affirmation of Sidney Guran, ¶ 1.) Guran said that because of his physical condition he could not travel without being accompanied by his physician. (*Id.*, ¶ 2.) He said that he recalled speaking with Dumas about how Dumas should go about seeking appointment of appellate counsel. (*Id.*, ¶ 4.) Guran said that he never told Dumas he would represent him on appeal, as he was not a member of the Appellate Panel. (*Id.*, ¶ 5.) He said that he might have told Dumas that an appeal

---

1. Although Dumas's affidavit stated that this conversation happened on the day he was sentenced, the sentencing transcript indicates that the date was May 27, 1983, not May 20.

could take "several" years, but that he never told him it would take four to five years. (*Id.*, ¶ 6.) Guran's affidavit said nothing one way or the other about any conversation he might have had with Dumas about the filing of a notice of appeal.

On May 2, 1988, Justice Golia denied Dumas's motion to vacate his sentence. He concluded that even if Guran had told Dumas he would file a notice of appeal, it was unreasonable for the defendant to wait as long as he did (more than three years), without any communication from his counsel, to inquire into the status of his appeal. (Memorandum of Justice Joseph G. Golia at 3.) The court concluded that the "defendant's present predicament was solely the result of his own inertia and lack of forthright concern." (*Id.*)

Leave to appeal was granted by the Appellate Division, Second Department. That court affirmed Justice Golia's decision on April 2, 1990, but it found error in his approach to the case. *See People v. Dumas*, 160 A.D.2d 720, 554 N.Y.S.2d 47, 48 (2d Dep't 1990). The court noted that the relief sought by Dumas had already been denied by the Appellate Division when it considered his § 460.30 motion. *See id.* Accordingly, the Supreme Court had no authority to grant relief to Dumas, even if it had wanted to, and it should not have held the evidentiary hearing. *See id.* Leave to appeal to the Court of Appeals was denied on August 16, 1990.

Dumas's petition for a writ of habeas corpus in this case was dated April 17, 1997, and received by the court on April 24, 1997.[2] In the petition, he contended that his counsel had an "absolute duty" to file a notice of appeal and that he was constitutionally ineffective for failing to do so. On March 24, 1998, I granted the respondent's motion to dismiss the petition as untimely pursuant to the interpretation of the statute of limitations of the Antiter-

rorism and Effective Death Penalty Act of 1996 ("AEDPA") suggested in *Peterson v. Demskie*, 107 F.3d 92 (2d Cir.1997). The Second Circuit ·thereafter decided *Ross v. Artuz*, 150 F.3d 97 (2d Cir.1998), which rejected *Peterson* 's suggestion and established a one-year post-AEDPA grace period for habeas petitioners whose convictions became final before AEDPA's effective date of April 24, 1996. Based on *Ross,* the Second Circuit on October 30, 1998, vacated my order dismissing the petition. I then directed the respondent to brief the merits of the petition, which he did on October 5, 1999. On December 3, 1999, the respondent moved to dismiss the petition as untimely under Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts. I subsequently appointed counsel for Dumas. Oral argument was held on April 28, 2000.

## DISCUSSION

### A. *Habeas Rule 9(a)*

█ The respondent has moved to dismiss this petition pursuant to Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts (hereinafter "Habeas Rule 9(a)"), which states:

> A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

Even a petition, like this one, that is timely for purposes of AEDPA may be dismissed pursuant to Habeas Rule 9(a). *See Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir.1998).

█ A respondent seeking to dismiss a habeas petition under Rule 9(a) faces a

---

**2.** April 17 is deemed the date on which the petition was filed. *See Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (when a prisoner is proceeding *pro*

*se,* he is deemed to have filed a document on the date he delivered it to prison authorities for forwarding to the court clerk).

"heavy burden." *Hughes v. Irvin,* 967 F.Supp. 775, 779 (E.D.N.Y.1997) (quoting *Walters v. Scott,* 21 F.3d 683, 686 (5th Cir.1994)). The respondent must "(1) make a particularized showing of prejudice, (2) show that the prejudice was caused by the petitioner having filed a late petition, and (3) show that the petitioner has not acted with reasonable diligence as a matter of law." *Id.* (quoting *Walters,* 21 F.3d at 686–87); *accord Clency v. Nagle,* 60 F.3d 751, 753 (11th Cir.1995); *Harris v. Pulley,* 885 F.2d 1354, 1366 (9th Cir.1988) (as amended on denial of rehearing and rehearing en banc).

If the respondent fails to establish any one of these elements, its Rule 9(a) motion fails. For instance, if the respondent fails to make the required showing of prejudice, it is irrelevant whether the petitioner was diligent or not in filing his habeas petition. *See Smith v. Duckworth,* 910 F.2d 1492, 1496 (7th Cir.1990). Therefore, even a lengthy delay will not, standing alone, provide a basis for a Rule 9(a) dismissal. *See Walters,* 21 F.3d at 687. In fact, before passing the rule Congress deleted a provision from the draft version that would have created a rebuttable presumption of prejudice after a delay of five or more years. *See Lonchar v. Thomas,* 517 U.S. 314, 327, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996). Congress concluded that such a presumption would be inconsistent with habeas relief's equitable purposes. *See id.* (quoting H.R.Rep. No. 94–1471, at 5 (1976), 1976 U.S.C.C.A.N. 2478, 2481 ("[I]t is unsound policy to require the defendant to overcome a presumption of prejudice.")). Significantly, the prejudice contemplated by Rule 9(a) is only prejudice in

responding to the habeas petition; prejudice upon eventual retrial of the defendant is not a factor. *See Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986).

The second element of the respondent's required showing—the element of causation—is particularly relevant in this case. "At a minimum, [the causation element] requires the state to establish that if [petitioner] had filed his habeas petition at some earlier time, the evidence the state says it has lost would have been available." *Walters,* 21 F.3d at 688. For instance, the state cannot base its prejudice claim on the death of a key witness if that death occurred the day after the petitioner's state court trial. *See id.; cf. Campas v. Zimmerman,* 876 F.2d 318, 325 (3d Cir.1989) ("The court noted that the record did not contain evidence of his counsel's death, and more particularly, that since the record did not disclose the date of his death, the State had not demonstrated that Hill's counsel would have been available if Hill had brought his petition within a reasonable period of time—the time prescribed by Rule 9(a))." (citing *Hill v. Linahan,* 697 F.2d 1032 (11th Cir.1983) (per curiam)); *Towns v. United States,* 190 F.3d 468, 470 (6th Cir.1999) (noting that petitioner should be given opportunity to demonstrate that "whatever prejudice the government has suffered would not have been avoided had the motion been filed earlier").

■ In support of his Rule 9(a) dismissal motion, the respondent relies entirely on the fact of Guran's death, which took place in either February 1998 or February 1999.[3] Because he is now unavailable to

---

**3.** At the outset, I note that several courts have held that a motion to dismiss under Rule 9(a) should be considered as a motion for summary judgment when the respondent relies on evidence outside the pleadings. *See United States v. Gutierrez,* 839 F.2d 648, 651 (10th Cir.1988); *Hill,* 697 F.2d at 1034; *McDonnell v. Estelle,* 666 F.2d 246, 249 (5th Cir.1982); Habeas Rule 12 (requiring court to apply Rule of Civil Procedure when there is no Habeas rule on point). In this case, the re-

spondent's entire argument rests on its assertion that Guran died in February 1998. However, the respondent has offered no admissible evidence in support of this contention; it is simply stated in respondent's memorandum of law. (Memorandum of Law in Support of Motion to Dismiss Habeas Corpus Petition at 12.) The affirmation of petitioner's counsel in opposition to the motion to dismiss then cites respondent's papers for the fact of Guran's death (although it changes the

provide his account of what transpired regarding Dumas's appeal, the respondent asserts that he is prejudiced in defending against Dumas's petition.

There are several fatal defects in this argument. First, whether Guran died in 1998, as respondent avers, or in 1999, as petitioner avers, he was alive when petitioner filed this action in April 1997. Respondent made no effort to preserve his testimony at that time. Instead, the respondent made a strategic decision to move to dismiss the petitioner on AEDPA timeliness grounds. I granted that motion and was subsequently reversed by the Second Circuit. It was this decision to engage only in motion practice, not petitioner's delay in bringing this action, that was the proximate cause of respondent's inability to preserve Guran's testimony before he died.

Second, even if Guran had not died, it is exceedingly unlikely that he would have been able to contribute meaningful testimony at any time between shortly after Dumas's conviction in 1983 and the filing of his habeas petition in 1997. I am able to reach this conclusion with some confidence because there are two published court opinions about Guran's competence during the twilight of his long career, one by the Appellate Division, First Department, and one by the Second Circuit sitting en banc. The following narrative is drawn from those opinions.

Guran was admitted to practice in New York in 1937. *See In Re Sidney J. Guran*, 126 A.D.2d 216, 513 N.Y.S.2d 402, 403 (1st Dep't 1987). Guran said that he stopped accepting new cases after his 70th birthday in 1984 (approximately one year after his representation of Dumas). *See id.* In October 1986, the Departmental Disciplinary Committee of the Appellate Division, First Department, initiated disciplinary proceedings against Guran, alleging that he had converted client money in 1976 and provided negligent representation in a real estate transaction in 1977. *See Bellamy v. Cogdell*, 974 F.2d 302, 303 (2d Cir.1992) (en banc). In November 1986, Guran's attorney sought an adjournment of the disciplinary hearing, saying his client was "not mentally capable" of preparing for the hearing because of illness. *Id.* According to a filing by his physician, Guran had recently been diagnosed with polyneuropathy, a condition affecting the peripheral nervous system, and had become "virtually incapacitated" by medication and "physical and emotional stress." *Id.* at 304.

On March 26, 1987, the First Department suspended Guran from the practice of law, without reaching the merits of the underlying charges against him. *See In re Guran*, 513 N.Y.S.2d at 403. "Since respondent maintains that he is not mentally capable of preparing for a hearing, he implicitly concedes that he is, at this time, incapable of practicing law." *Id.*[4]

date to February 1999). (Affirmation in Opposition to Respondent's Rule 9(a) Motion, ¶¶ 5, 10.)

Because petitioner, who is now represented by counsel, has not challenged the respondent's motion on evidentiary grounds, I will accept Guran's death as an uncontested fact for purposes of considering this motion. Moreover, the discrepancy in dates of death has no significance in my resolution of the motion; it therefore need not be resolved.

4. Guran's criminal defense work has already been the subject of significant litigation in this circuit. While the disciplinary charges were pending against him in the First Department (and while Guran was asserting his physical inability to participate), Guran was represent-

ing a defendant in a murder trial in the New York Supreme Court, Queens County. Guran had advised the Appellate Division of the representation, which he said he planned to conduct with co-counsel. *See Bellamy*, 974 F.2d at 304. He also advised the trial judge of the charges pending against him, although he did not tell his client. *See id.* Co-counsel was unable to appear, so Guran tried the case alone. The defendant was convicted. Two months later, Guran was suspended by the First Department. *See id.* The defendant later filed a petition for a writ of habeas corpus, contending that he had been deprived of counsel in a *per se* violation of the Sixth Amendment. The district court denied the petition, but a panel of the Second Circuit reversed, holding that the fact that Guran's ill

As this narrative demonstrates, Guran's competence was in doubt as early as 1986, and the respondent has offered no evidence that his condition improved after that time. Therefore, it is fair to conclude that Guran's inability to provide evidence in this proceeding is not causally connected to Dumas's delay in filing, but is rather attributable to Guran's own illness, which came on shortly after his representation of Dumas.

Finally, there is no need to speculate about what kind of evidence Guran could have provided had it been solicited in a timely fashion. Guran provided an affidavit on the very question at issue here to the Supreme Court in conjunction with Dumas's Criminal Procedure Law § 440.10 petition in early 1988. This affidavit provides the third fatal flaw in respondent's Rule 9(a) motion. Respondent is not prejudiced by the lack of testimony from Guran because Guran's testimony has been preserved. *See Smith*, 910 F.2d at 1495 (finding no Rule 9(a) prejudice, notwithstanding deaths of two central witnesses, when the witnesses had testified on the record at a suppression hearing); *see also King v. Hoke*, 825 F.2d 720, 723 (2d Cir. 1987) (finding no prejudice for purpose of Rule 9(a) when key participants had died or could no longer remember events but when court could "fairly assess the claimed error based on the transcripts"). The affidavit is brief, but respondent has offered no reason to believe that he would have been able to secure better testimony from Guran now, but for his death, than the district attorney was able to secure in 1988 (during the course of a proceeding in substantially the same posture, with the same litigation incentives, as this one).

Because the respondent has failed to make the required particularized showing of prejudice, his motion to dismiss under Habeas Rule 9(a) is denied.

### B. *Nature of the Claim*

■ In a recent decision, the Supreme Court held that the familiar ineffective assistance of counsel standard, first articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies when a defendant, like Dumas, alleges that his counsel was ineffective for failing to file a notice of appeal. *See Roe v. Flores–Ortega*, ⸺ U.S. ⸺, ⸺, 120 S.Ct. 1029, 1034, 145 L.Ed.2d 985 (2000). Accordingly, the defendant must show both that his attorney's performance was objectively unreasonable and that he was prejudiced by the deficiency. *See id.* (citing *Strickland*, 104 S.Ct. 2052, 466 U.S. at 688, 694).

■ A defendant clearly satisfies the first *Strickland* prong if his attorney "disregards specific instructions from the defendant to file a notice of appeal," for there could be no objectively reasonable grounds for failing to comply with such a request. *See id.* at 1035. On the other hand, if the defendant directs his counsel not to file the notice, counsel does not perform deficiently by following those directions. *See id.* If the client has not stated his view one way or the other, then courts are to ask an "antecedent" question: whether counsel "consulted" with the defendant about appealing. *Id.* If so, then counsel's performance turns (unsurprisingly) on whether or not he followed his client's "express instructions with respect to an appeal." *Id.* The absence of consultation, on the other hand, will constitute objectively unreasonable performance where "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appeal-

---

health during the period of trial later led to his suspension from practice was sufficient to establish a *per se* violation of the right to counsel. *See Bellamy v. Cogdell*, 952 F.2d 626, 631 (2d Cir.1991). The Second Circuit, sitting en banc, reversed the panel, holding that the facts of the case did not bring it within the narrow category of *per se* violations of the Sixth Amendment. *See Bellamy*, 974 F.2d at 307–08.

ing." *Id.* at 1036. Counsel's failure to consult is more likely to constitute objectively unreasonable performance if his client was convicted after trial, as opposed to after a guilty plea. *See id.* In announcing these standards, the Supreme Court predicted that lower courts applying them "will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." *Id.* at 1037.

■ The prejudice prong of the *Strickland* test is made out in such cases if the defendant can show that "but for counsel's deficient performance, he would have appealed." *Id.* at 1038; *see also id.* (noting that there is a "presumption of prejudice" when counsel's deficient performance resulted in the loss of an entire judicial proceeding). This inquiry tends to telescope with the effectiveness inquiry. *See id.* at 1039. Both are satisfied, for example, if counsel knew definitively of the defendant's desire to appeal but failed to file the required notice.[5]

## C.  *Exhaustion Requirement*

■ I need not apply the above standards to this case, however, because Dumas's petition must be dismissed for failure to exhaust state remedies. "[T]he exhaustion doctrine, which is 'principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings' generally requires that a claim of ineffective assistance be presented to the state courts ... whether [the] claim is asserted as cause for a procedural default or denominated as an independent ground for habeas relief." *Murray v. Carrier,* 477 U.S. 478, 488–89, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (quoting *Rose*

*v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)) (internal citation omitted); *see also Edwards v. Carpenter,* — U.S. —, —, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000) (applying *Murray* to claim of ineffective assistance of appellate counsel); 28 U.S.C. § 2254(b)(1)(A) (codifying exhaustion requirement); *id.* § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")

Moreover, as the Supreme Court recently noted, it is insufficient to "present[ ]" the claim to the state courts in a procedurally irregular way; the claim must be litigated in a manner that will allow the state courts, consistent with their rules, to decide it on the merits. *Edwards,* 120 S.Ct. at 1591–92; *see also id.* at 1592 (noting that the purposes of exhaustion requirement would be "frustrated were we to allow federal review to a prisoner who had presented his claims to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it"); *Murray,* 477 U.S. at 490, 106 S.Ct. 2639 ("A State's procedural rules serve vital purposes at trial, on appeal, and on state collateral attack.").

Dumas twice attempted to litigate his contention regarding his notice of appeal in state court, but in neither instance did he do so in a manner consistent with New York procedure. First, his motion to file a late notice of appeal pursuant to § 460.30 was filed beyond the one-year deadline for such motions.[6] Second, his claim of inef-

---

**5.** In a decision issued three weeks prior to *Flores–Ortega,* the Second Circuit had held that a defendant raising such claims need not show *Strickland* prejudice. *See Hernandez v. United States,* 202 F.3d 486, 488–89 (2d Cir. 2000) ("[P]etitioners whose attorneys failed to preserve their rights to appeal need not show prejudice to establish ineffective assistance of counsel."). To the extent *Hernandez* conflicts

with *Flores–Ortega, Hernandez* has obviously been abrogated.

**6.** Dumas's § 460.30 motion did not specifically invoke the Sixth Amendment or the constitutional right to effective assistance of counsel. I need not address the significance, if any, of those omissions.

fective assistance of appellate counsel was improperly brought in a § 440.10 petition in the trial court, which had no jurisdiction to entertain it. *See Dumas,* 554 N.Y.S.2d at 47.

Notwithstanding this procedural history, the respondent does not argue that Dumas has procedurally defaulted his ineffective assistance of appellate counsel claim.[7] In fact, respondent's position is just the opposite. He argues that there is a procedural mechanism available for Dumas: a writ of error coram nobis filed in the Appellate Division. (Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus at 10–11.) *See People v. Bachert,* 69 N.Y.2d 593, 598, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987) (holding that common law writ of error coram nobis filed in Appellate Division is proper procedural vehicle for claim of ineffective assistance of appellate counsel, absent statutory mechanism for raising claim). Respondent contends that the Appellate Division will entertain such a motion, notwithstanding the passage of time and Dumas's failure to comply with the procedural requirements of Criminal Procedure Law § 460.30. (Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus at 10–11 & n. 3.) *See Harris v. Artuz,* No. 99 Civ. 5019, 2000 WL 358377, at *3 (S.D.N.Y. Apr.7, 2000) (citing *People v. Richetti,* 302 N.Y. 290, 298, 97 N.E.2d 908 (1951) for the proposition that there is no time limit governing the filing of a writ of error coram nobis); *Restrepo v. Kelly,* 178 F.3d 634, 641 (2d Cir.1999) (holding that non-compliance with one-year deadline of § 460.30 does not constitute procedural default of ineffective assistance of appellate counsel claim for failure to file notice of appeal).[8]

Because there appears to be an unexhausted state remedy available to Dumas, his petition must be dismissed. *See Harris,* 2000 WL 358377 at *3 (dismissing petition raising ineffective assistance of appellate counsel for failure to file writ of

---

**7.** A federal claim is procedurally defaulted when a prisoner has "failed to meet the State's procedural requirements" for presenting it and has therefore "deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A federal court will not consider a defaulted claim unless the prisoner can show cause for his default and prejudice flowing from it, or "a sufficient probability that [a federal court's] failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards,* 120 S.Ct. at 1591.

**8.** Because of the position taken by respondent here, the Appellate Division may very well find the state estopped from advancing any argument against Dumas's petition other than one going to the merits. If, however, the Appellate Division does conclude that Dumas's failure to comply with § 460.30 constitutes a procedural default of his ineffective assistance of appellate counsel claim, he is likely to renew his petition in this court. He may then have to demonstrate cause and prejudice for his default. *See Edwards,* 120 S.Ct. at 1591 (holding that failure to comply with Ohio court rule's deadline for seeking reopening of appeal due to ineffective assistance of appellate counsel could constitute procedural bar to habeas court's consideration of the claim). *But see Restrepo,* 178 F.3d at 641 (holding that failure to comply with § 460.30's one-year deadline does not bar habeas court's consideration of claim that counsel was ineffective for not filing notice of appeal). As cause, Dumas is likely to argue ineffective assistance of counsel, *i.e.* that just as Guran was ineffective for failing to file a notice of appeal, he was ineffective for allowing the one-year deadline in § 460.30 pass without filing a motion for extension of time. That argument, however, will be unexhausted, possibly requiring yet another dismissal and another petition for a writ of error coram nobis in the Appellate Division. *See Edwards,* 120 S.Ct. at 1591–92 (holding that, to constitute cause for a procedural default of a federal claim, a claim of ineffective assistance of counsel must itself be exhausted).

In order to avoid this federal-state volley, the Appellate Division might choose to evaluate both claims at once. In other words, if it finds that Dumas's failure to comply with § 460.30 constitutes a procedural bar to its consideration of his ineffective assistance of counsel claim relating to his failure to file a timely notice of appeal, it might then go on to evaluate his ineffective assistance of counsel claim relating to his failure to file a timely § 460.30 motion.

error coram nobis in the Appellate Division).

## CONCLUSION

Dumas's petition for a writ of habeas corpus is dismissed for failure to exhaust state remedies. Petitioner is advised that he must act with extreme haste in order to preserve this Court's ability to revisit his claim in the event he returns here after the Appellate Division decides his motion for a writ of error coram nobis. Given that Dumas filed his petition on April 17, 1997, he retains only seven days of the one-year grace period established in *Ross v. Artuz,* 150 F.3d 97 (2d Cir.1998). I am directing the Clerk not to enter judgment for two weeks in the hope that Dumas will file his motion in the Appellate Division before that date. Dumas is further advised that if the Appellate Division rules against him, its decision will not be appealable to the Court of Appeals, *see People v. Marsicoveteri,* 79 N.Y.2d 913, 581 N.Y.S.2d 664, 590 N.E.2d 249 (1992), so he should not seek leave to appeal to that court. The AEDPA clock will begin running when the Appellate Division issues its decision. *See Geraci v. Senkowski,* 211 F.3d 6, 9 (2d Cir.2000) (holding that clock starts when court issues decision, not when defendant receives notice of it). If it becomes necessary to refile his habeas petition, it is incumbent upon Dumas to do so immediately upon the Appellate Division's decision. He may do so by letter advising this Court of the Appellate Division's decision and stating that he seeks to reinstate his habeas petition. The Court will then issue a briefing schedule.

The Clerk is advised that this order dismissing the petition closes the case. The Clerk is further advised not to enter judgment until June 20, 2000.

So Ordered.